NEW YORK WATER SERVICE CORPORATION, Appellant-Respondent, v. CITY OF NEW YORK, Respondent-Appellant.

First Department, June 11, 1957.

*Milton S. Gould* of counsel (*George Trosk, Robert Boehm* and *Alvin M. Stein* with him on the brief; *Gallop, Climenko & Gould,* attorneys), for appellant-respondent.

*Seymour B. Quel* of counsel (*James J. Thornton, Sidney Brandes* and *G. Gary Sousa* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for respondent-appellant.

VALENTE, J. We have here presented for consideration cross appeals from a judgment in plaintiff's favor in an action for breach of contract against the City of New York. The plaintiff appeals on the ground that the amount awarded is inadequate and the defendant cross-appeals from the entire judgment.

The gravamen of the plaintiff's complaint is the refusal of the city to issue permits for the plaintiff — a private water company furnishing water to the Flatbush area of Brooklyn under a franchise — to hook up five new wells to its distribution system. The plaintiff alleges that this obliged it to purchase additional high-cost water from the city in order to fulfill its franchise obligations for a period of approximately one year preceding June 30, 1947, when the city acquired the plaintiff's property by eminent domain. The plaintiff claims that the production from these wells would have been used 100% to reduce its purchase from the city and that it should be credited with the maximum theoretical capacity of the new wells, notwithstanding the fact that past operating experience indicated its other wells generally were operated at a fraction of actual capacity. The measure of damage sought is the difference between the cost to it of such city water and its cost of producing water from the five new wells if the permits had been issued.

The law issues, which consumed a considerable part of the record before us, viz., that the plaintiff has no claim in contract; that the issuance of the permits by the city would have been *ultra vires;* and that the remedy of the plaintiff is an article 78 proceeding, were determined adversely to the city on a motion to dismiss the complaint (201 Misc. 594, affd. 279 App. Div. 1048, affd. 304 N. Y. 945). The city, not having objected to the submission and consideration of the issue of *ultra vires* on the appeal incident to the motion addressed to the pleadings, cannot now offer it as a defense (*Powers* v. *Mulford*, 3 A D 2d 99; *Matter of Colin* v. *Appellate Division of Supreme Court*, 3 A D 2d 682). In addition, the plaintiff has established the existence of a valid and subsisting agreement with the city to supply water to the residents of the Flatbush area of Brooklyn. This agreement was breached by the city's failure to issue the necessary permits to connect the wells in question. The requisite authority for the construction of the wells appears to have been granted by the city and State.

The issues for our determination are whether the record before us establishes damage to the plaintiff and, if so, the extent and measure thereof. We are not satisfied with the plaintiff's proof on the question of damages and we disagree with the measure of damages applied by the trial court. The proof falls far short of sustaining the claim that the production of the wells would be used 100% to reduce purchases from the city and that plaintiff is entitled to a credit for the maximum theoretical capacity of the new wells.

The documents relied upon by the plaintiff are equivocal. Plaintiff's petition to the State Water Power & Control Commission alleges that the total capacity of the wells will not exceed 5,500,000 gallons daily, and that "[i]t is intended that, as they are completed and put into service equal capacity of wells having less desirable water will go out of regular service." The same purpose is stated in a letter to the Board of Estimate in connection with plaintiff's efforts to obtain permits. In that letter it is stated that "[t]he purpose in drilling these wells was not to add to the aggregate supply of water for Flatbush but to permit the reduction of withdrawals of water from wells in which water had become too hard." There is no suggestion in the plaintiff's petition of the significant financial benefit now claimed to underlie the proposal.

The decision of the State commission, granting the application to bring in the new wells, not only restates these averments, but also states that plaintiff asked authority to sink additional wells in order to reduce the amount of water purchased from the city. The oral testimony of the plaintiff's witnesses does not explain these differences and consequently fails wholly to resolve the inconsistency. Furthermore, such testimony is disputed.

It is evident that the plaintiff did not intend originally that all of the water which the wells were capable of producing was to be used in the reduction of its purchases from the city. Indeed there is hardly a suggestion in the petition that it was to be used for any purpose other than to replace water from other wells. Hence, there is a definite burden upon the plaintiff to overcome the inference raised by its petition that the new water was to be used for the latter purpose. There is no basis for the conclusion that all of it was to be used for the reduction of purchases from the city and, adopting a most charitable view, the record is not satisfactory as to what part, if any, was to be used for that purpose. The experience the plaintiff had when it last brought in wells as to their producing capacity and the extent the new production was used to replace city water would be pertinent on a retrial. Two things which do appear with reasonable certainty are that the wells were to be limited in their production to 5,500,000 gallons per day, which is subject to proof that they could produce that gallonage, and that some part, if not all, of their production was to be used to replace water from existing wells.

It is only because of the statement in the decision of the commission that the water from the new wells was to be used partially to replace city water that we are prompted to afford the plaintiff an opportunity to establish, if it can, whether and

to what extent it was damaged. This can be done at a new trial without the confusion that perhaps was engendered by the other law issues in the case. The burden of proof on this issue is on the plaintiff. Should the plaintiff successfully establish the fact and extent of damage, then we pass to the standards to be applied in measuring the monetary damages.

In fixing damages the object generally is to compensate or to indemnify, that is, to put the plaintiff in as good a position as he would have been had the defendant abided by its agreement (5 Williston on Contracts [rev. ed.], § 1338). This should be accomplished at the least cost to defendant who is only to be charged with those injuries that he had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury (Restatement, Contracts, § 330). Gains prevented as well as losses sustained are proper elements of damage. There is no rule of thumb to be applied to any given set of facts. We must look to the nature of the contract and the circumstances surrounding its breach.

In this case, the city knew that the plaintiff was constructing the wells. It was reasonably foreseeable that if the plaintiff were not allowed to hook them up, it would be out of pocket the cost of construction and would be deprived of their production. Plaintiff was compensated for their cost of construction in the condemnation proceedings so that we are not concerned with that item. The loss here is not a loss of profit, but a loss of the producing potential of the wells to the extent that it would have permitted plaintiff to reduce its purchases from the city. But for the breach of the agreement by the city, plaintiff would have had the benefit of the output of the wells. Thus, at the new trial, it will be incumbent on the plaintiff to establish the producing capacity of the wells subject to the limitation of 5,500,000 gallons daily production. From this amount there must be established and deducted the gallonage that would have been used to replace water from existing wells and any other variables such as seepage. If there be any remaining gallonage and plaintiff establishes that it would have been used to reduce its purchases from the city, then there is injury established on which damages may be computed.

In applying the measure of damages, it is pertinent that the plaintiff had a going business and that any loss it suffered in this instance would flow from its being deprived of the additional production of these wells. Hence, the measure of damage

to be applied is the difference between the production cost per gallon from the new wells of the water that would be used to reduce purchases from the city and the price the plaintiff paid the city for water.

In computing this cost for the purpose of the applicable measuring of damages, the calculation would be based on the actual items of additional cost incurred to make these wells produce. The plaintiff is entitled to recover to the extent that it was not able to substitute low-cost water for high-cost water. Obviously, as a matter of business acumen, if one obtains lower cost units to replace higher cost units, the lower cost units will be first applied to the elimination of the higher cost units. Therefore, in applying the measure of damages in this case, one looks not to the average profit, or loss, sustained by the plaintiff in the production of all of the water that it sold, but one examines instead its highest cost water and compares that with the lowest cost water to the extent that the latter would be substituted for the former. In determining the cost of the new water, there should be deducted only as costs those items of expense, operation and any actual deterioration (as distinguished from amortized depreciation) of the wells or the machinery which would have resulted from operation of the new wells. Those costs need not bear any relationship to the disbursements or costs that it might sustain in the production of water from old wells. Consequently, the average cost of the production of water is quite irrelevant because the water from the new wells would not replace the average water produced as fungible from all the wells but would be specifically used to replace water that cost plaintiff the most. That water was water purchased from the city at a price of $200 per million gallons.

Thus, in computing the cost of the additional production, there can properly be included as items of expense the operation, maintenance, actual deterioration as indicated above, and repair of the machinery used in the operation of the new wells. Since the plaintiff had a going business, there should be excluded from this cost its general expense and overhead and any like items that were constant and existed regardless of the operation of the new wells (*Sayer* v. *Wilstrop*, 200 App. Div. 364).

It appears that plaintiff filed a notice of claim in 1949 and an amended notice on December 15, 1950. The trial court in its opinion noted that if plaintiff's proof of its case at the trial were to depend on the earlier notice, there would have been a defect in proof and a consequent nonsuit. Under the circumstances, interest on any recovery by the plaintiff would commence to run on a day 30 days from the filing of the amended

notice of claim which would be January 15, 1951. (*La Chicotte* v. *City of New York,* 166 App. Div. 279.)

For the reasons indicated, the judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

PECK, P. J., BREITEL, FRANK and McNALLY, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to abide the event.