OLIVER W. ARNOLD v. RAY CHARLES ENTERPRISES, INC. AND RAY CHARLES (AS LEADER OF "THE SIXTEEN PLUS THE RAELETS, MUSICIANS").

(Filed 24 March, 1965.)

**1. Courts § 20—**

The law of this State governs all matters of procedure in an action brought here on a contract executed in another state and calling for performance in a third state.

**2. Contracts § 12—**

Where the terms of a contract are not ambiguous no question of legal interpretation arises.

**3. Courts § 20—**

Where there is no difference between the law of the state in which the contract was executed and the law of the state in which it was to be performed, there is no necessity of determining which law should be applied.

**4. Same—**

Ordinarily, the law of the forum controls as to the burden of proof.

**5. Contracts § 25—**

The burden is on the person failing to discharge a contractual obligation to prove that such failure came within provisions of the contract excusing nonperformance on the happening of certain contingencies.

**6. Appeal and Error § 49—**

Ordinarily, when the court fails to find a fact essential to support the judgment the cause must be remanded, but where the record discloses that appellants had the burden of proof and failed to carry such burden by introduction of evidence sufficient to support a finding in his favor on the crucial fact, remand would be futile, and the Supreme Court may allow the conclusions of law to stand as a directed verdict.

**7. Trial § 31—**

The court may always direct a verdict against the party who has the burden of proof if he fails to introduce evidence, or if the evidence offered and taken to be true fails to make out a case in his favor.

**8. Contracts § 20—**

Where a contract excuses performance upon the happening of certain contingencies, it is the duty of the parties to exercise reasonable care to obviate the happening of such contingencies.

**9. Same— Defendants' evidence held insufficient to show the exercise of care to avoid contingency rendering performance on their part impossible.**

The contract in suit obligated defendants to give a concert at a specified time. The findings disclosed that plaintiff knew defendants were traveling in their own plane, were to arrive at a nearby airport and had a bus waiting thereat, that defendants' plane arrived at the airport in ample time but was prevented from landing by fog, that the plane was then piloted to a nearby airport with radio notice to plaintiff, who had a bus sent to the second airport, which bus would have brought the troupe to the *locus* about an hour after schedule and that, the weather having improved, defendants attempted again to fly to the port of original destination but were turned back because of oil line trouble. *Held:* In the absence of evidence on the part of defendants that they had exercised reasonable care in the inspection of the engine in order to discover any defects which might prevent its proper operation or had had the prior trouble with the oil line remedied, defendants have failed to carry the burden of showing that their failure to perform was due to "accident or accident to means of transportation" within the exculpatory clause of the contract, and a directed verdict for plaintiff is warranted.

**10. Contracts § 29—**

Where the contract provides that each party should be entitled to 50% of the proceeds of the ticket sales for the contemplated concert, the measure of damages for breach of the contract is 50% of the value of the tickets sold, without deductions for any unexpended promoting or advertising costs, the gross receipts and not the net profit being the determinative figure under the contract.

HIGGINS, J., dissenting.

PARKER, J., joins in dissent.

APPEAL by defendants from *Shaw, J.,* March 30, 1964 Regular Civil Session of GUILFORD. This appeal was docketed in the Supreme Court as Case No. 607 and argued at the Fall Term 1964.

Civil action to recover damages for breach of contract. The parties waived a jury trial under the provisions of G.S. 1-184. Judge Shaw

heard the case and made the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

1.  Plaintiff and defendants entered into a written contract by the terms of which defendants agreed to perform for the plaintiff on Sunday evening, September 16, 1962, at 8:00 o'clock p.m. at the Cross Road Mall in the City of Roanoke, Virginia.

2.  The contract provided, *inter alia*, that the plaintiff pay to the defendants for said performance a guarantee of $3,500, plus 50% of gross admission receipts in excess of $7,000.00, less admission taxes.

3.  The contract also provided as follows: 'The agreement of the employees to perform is subject to proven detention by sickness, accidents or accidents to means of transportation, riots, strikes, epidemics, acts of God, or any other legitimate conditions beyond the control of the employees (defendants).'

4.  The defendants' troupe left Baltimore, Maryland, by private Martin 404 plane owned by the defendants and arrived at Roanoke, Virginia, at 4:30 or 4:40 on the afternoon of the date of the performance. Plaintiff knew that defendants' troupe intended to travel by air and arranged to have buses waiting at the Roanoke Airport for them.

5.  The duly constituted authority of the Federal Aviation Agency denied the defendants' troupe permission to land at the airport in Roanoke because of the low ceiling then existing. Defendants' pilot determined that the nearest open airport was at Charlottesville, Virginia, to which airport he proceeded, radioing ahead for buses for transportation.

6.  The troupe arrived in Charlottesville, Virginia, on the plane at 5:15 p.m. on the same afternoon, and shortly thereafter found a bus waiting to carry the troupe to Roanoke by bus. Meantime, the pilot discussed with Mr. J. D. Brown, Vice President of the corporate defendant, the question of whether the troupe should take the highway bus to Roanoke or again undertake to land their plane at Roanoke airport.

7.  Mr. Brown determined that the troupe should attempt to again land their plane at Roanoke and the plane took off for that city about 6:40 p.m. on the evening of the performance.

8.  Prior to defendants' departure from Charlottesville, the Roanoke airport had opened for in flights and Mr. Brown had de-

termined that if the troupe traveled by bus from Charlottesville to Roanoke they would arrive approximately one hour late for the scheduled 8:00 o'clock performance that evening.

9. After take-off, a severe oil leakage occurred in one of the engines on the plane. The pilot declared an emergency and was turned over to a Washington controller of the Federal Aviation Agency. The controller routed the plane back to Charlottesville, Virginia.

10. After landing at Charlottesville for the second time, defendants' manager telephoned the plaintiff about 7:30 p.m. on the day of the scheduled concert and transmitted a message to the plaintiff's mother, which was relayed to him a few minutes before the performance was scheduled to begin. If defendants' troupe had chartered another plane and attempted to reach Lynchburg via air and shuttle to Roanoke via auto the performance could not have taken place until 10:30 or 11:00 o'clock p.m.

11. Defendants refunded to the plaintiff the amount of $1,-750.00 deposited with defendants by plaintiff on the signing of the contract and incurred other expenses in their efforts to perform the contract.

Based upon the foregoing Findings of Fact, the Court makes the following:

CONCLUSIONS OF LAW

1. The Court concludes, as a matter of law, that the defendants were not prevented from performing the scheduled engagement within the meaning and intent of the clause in the contract as set out in paragraph three of the foregoing Findings of Fact.

2. In order for a party to be excused from performing his contract obligations under absolving clauses in the contract, the excuse must come, not only within the terms of the clause, but also be reasonably beyond the power of the parties to perform. The defendants had on the same afternoon experienced an inability to land their plane, but an alternate course was left open to them to travel to Roanoke by bus from Charlottesville. Provision for their transportation by bus had been made. Instead of accepting such alternate method of travel, defendants, through their manager, Mr. Brown, elected to endeavor to reach Roanoke again by plane. Such a choice was not the exercise of reasonable care, to prevent 'accident to means of transportation.'

3. The defendants did breach the contract and the plaintiff is entitled to recover the amount stipulated in the contract which was, in effect, 50% of the gross admission receipts, less admission taxes.

4. This Court has determined, from the evidence, that the amount of 50% of the gross receipts, less admission taxes is as follows:

| | | |
|---|---|---|
| 1518 General Admissions | | $ 5,313.00 |
| 2463 Advance Sales | | 7,389.00 |
| 1299 Reserved Seats | | 1,299.00 |
| Gross Receipts | | $14,001.00 |
| Less admission tax | | 1,400.10 |
| Balance | | $12,600.90 |
| Less guarantee due defendants | $3,500.00 | |
| Less one-half of the amount over $7,000 of gross receipts due defendants | 2,800.45 | |
| | $6,300.45 | 6,300.45 |
| Amount plaintiff is entitled to recover | | $ 6,300.45" |

From the judgment that plaintiff recover of defendants the sum of $6,300.45, together with the cost of the action, defendants appeal.

*Major S. High; Samuel S. Mitchell; Lee and Lee for plaintiff.*

*Smith, Moore, Smith, Schell & Hunter by Richmond G. Bernhardt, Jr. and James R. Turner for defendants.*

SHARP, J. The contract involved in this case was made in New York, it was to be performed in Virginia, and the action for its breach is brought in North Carolina. Unquestionably the law of the forum, North Carolina, governs all matters of procedure. *Howard v. Howard,* 200 N.C. 574, 158 S.E. 101. No question of interpretation arises; the language is clear and unambiguous, leaving no room for construction. The only question of substantive law raised by the assignments of error involves the proper measure of damages. *Johnson v. Lamar,* 250 N.C. 731, 110 S.E. 2d 323; 25 C.J.S., Damages § 4 (1941). Throughout, neither party has made any reference to the law of New York or that of Virginia, yet we are required to take judicial notice of foreign law. G.S. 8-4. It appears that the law of New York, *lex loci celebrationis,* and that of Virginia, *lex loci solutionis,* are no different with reference

to the substantive question here involved. There would be no profit, then, for us to exercise ourselves here to determine which law is to be applied, for to do so would take us into a "highly complex and confused part of conflict of laws." 16 Am. Jur. 2d, Conflict of Laws § 38 (1964). See *Id.* at §§ 38-42; 17 C.J.S., Contracts § 12(1), -(5) (1963); 15 C.J.S., Conflict of Laws §§ 11, 20-22 (1939).

> "The general rule is that, where a person by his contract charges himself with an obligation possible and lawful to be performed, he must perform it . . . (I)f a party desires to be excused from performance in the event of contingencies arising, it is his duty to provide therefor in his contract, at least where he could reasonably have anticipated the event." 17A C.J.S., Contracts § 459 (1963).

> "In order that a party shall be excused from performing his contract obligation by an absolving clause contained in the contract, the excuse must not only come within the terms of such clause, but also must be reasonably beyond the power of the party to prevent; that is, such a clause will not give a party the power arbitrarily to refuse performance, but he is under a duty to exercise a reasonable amount of care to prevent the happening of the contingency named." 17 Am. Jur. 2d, Contracts § 409 (1964).

Defendants take no exception to the first eleven findings of fact contained in the judgment. They do except to the findings of fact with reference to the amount of damages contained in Conclusion of Law No. 4, but which should have been included in the Findings of Fact as paragraph No. 12. G.S. 1-184.

The question raised by defendants' first three assignments of error is whether the findings of fact made by the trial judge support his conclusions of law that defendants were not relieved of their obligation to perform the contract in suit by "proven detention by . . . accident or accidents to means of transportation . . . or any other legitimate conditions beyond the control of the employees (defendants)."

Although the judge made no finding based upon it, plaintiff's testimony was that he knew defendants would travel to Roanoke by plane and he made no objection to this means of transportation. Had the parties so agreed, the contract could, of course, have specified another mode of travel as well as have required defendants to arrive in Roanoke on, say, the preceding day.

The findings of fact eliminated one of the questions debated in the brief, *i.e.,* whether, considering the ever-present weather hazards to avigation, defendants allowed themselves too little time to travel from Baltimore to Roanoke. When they left Charlottesville for Roanoke

at 6:40 p.m. on the day of the scheduled concert, the Roanoke Airport was open for "in flights." It was not, therefore, the weather which prevented defendants' arrival in time for the concert; it was an accident to "means of transportation," *viz.,* a severe oil leakage in one of the plane's engines. If this leakage was beyond the control of defendants, they are exculpated from liability under the express provisions of the absolving clause of the contract; if not, they are liable. See Annot., Express provisions in contract of sale, or for supply of a commodity, for relief from the obligation in certain event, 51 A.L.R. 990, 996.

Ordinarily the law of the forum controls as to the burden of proof, *Howard v. Howard, supra;* 3 Beale, Conflict of Laws § 595.3 (1935 Ed.); 15 C.J.S., Conflicts of Laws § 22(i) (1939); and the burden is on defendants to exculpate themselves from liability for their nonperformance. *Potter v. Water Co.,* 253 N.C. 112, 116 S.E. 2d 374; *Crouse v. Vernon,* 232 N.C. 24, 59 S.E. 2d 185; Annot., 51 A.L.R., *supra* at 906.

Defendants, as operators of the airplane upon which they depended for their arrival in Roanoke in time to perform their contract, were under the duty to exercise reasonable care in the inspection of its engines in order to discover any defects which might prevent its proper operation, and they are chargeable with knowledge of any defects which such inspection would disclose. Annot. Duty and liability as to pre-flight inspection and maintenance of aircraft, 30 A.L.R. 2d 1172. The testimony of defendants' booking agent, a witness for defendants, discloses that, after defendants were unable to land in Roanoke, on the flight from there to Charlottesville, the nearest open airport, they "had some oil line trouble with the plane." The agent received this information from the individual defendant's personal manager between 5:00 and 6:00 p.m. on the day in question. Was this trouble investigated, remedied, or attempted to be remedied during the hour and twenty-five minutes defendants were on the ground at Charlottesville? Defendants offered no evidence on this crucial point, and the burden was on them to do so.

We may concede that the facts found by the judge do not support his conclusions of law. (1) His findings are that, had defendants taken the bus provided for them at Charlottesville, they would have arrived one hour late for the scheduled concert. Their only chance to arrive on time was to undertake to land their plane in Roanoke. Had not engine trouble developed, their judgment would have been vindicated, for the weather had cleared and the airport was opened. Insofar as the findings disclose, at the time the decision to fly was made the only risk which was considered was the weather — not engine trouble. The judge's conclusion, however, was that because weather had once that

day prevented their landing at Roanoke, defendants should have chosen an alternate method of travel even though it would have made them one hour late for their engagement. We think this is a *non sequitur*. (2) He made no finding as to whether the engine trouble was beyond defendants' control. The judgment contains no finding with reference to inspection and repairs to the engine, the pivotal point here, in our view of the case. It does not follow, however, that this judgment must be reversed or remanded.

Ordinarily, when the parties waive a jury trial and the judge omits to find a material fact, we must remand the cause for a finding sufficient to support a judgment. *McMillan v. Robeson*, 225 N.C. 754, 36 S.E. 2d 235; *Shore v. Bank*, 207 N.C. 798, 178 S.E. 572; *Trust Company v. Transit Lines*, 198 N.C. 675, 153 S.E. 158. To remand this case for further findings, however, when defendants, the parties upon whom rests the burden of proof here, have failed to offer any evidence bearing upon the point, would be futile. By stipulation the evidence before the Superior Court consisted entirely of the exhibits and the transcript of proceedings in a former trial of this same case in the Corporation Court of the City of Lynchburg, Virginia, in June 1963. (At the conclusion of the evidence there plaintiff elected to take a voluntary nonsuit.) "The Court may always direct a verdict against the party who has the burden of proof, if there is no evidence in his favor, *as where he fails to introduce any evidence,* or if the evidence offered and taken to be true fails to make out a case." (Italics ours.) *Trust Co. v. Levy*, 209 N.C. 834, 184 S.E. 822; *accord, Strigas v. Insurance Co.*, 236 N.C. 734, 73 S.E. 2d 788; *Sanders v. Hamilton*, 233 N.C. 175, 63 S.E. 2d 187; *McCullen v. Durham*, 229 N.C. 418, 50 S.E. 2d 511. Defendants here, having chosen to rest their defense upon the transcript of a former trial in which they failed to offer evidence essential to the defense, have no cause to complain of an adverse judgment when the transcript affirmatively discloses their failure to carry the burden of proof which the law puts upon them.

Although we do not adopt his reasons, the conclusion of the trial Court that defendants are liable for their failure to perform the contract is sustained.

We come now to the question of damages.

"For a breach of contract the injured party is entitled as compensation therefor to be placed, insofar as this can be done by money, in the same position he would have occupied if the contract had been performed. The amount that would have been received if the contract had been kept and which will completely indemnify the injured party is the true measure of damages for

the breach." *Service Co. v. Sales Co.,* 259 N.C. 400, 415, 131 S.E. 2d 9, 21.

*Accord, New York Water Corp. v. City of New York,* 4 App. Div. 2d 209 (1st Dept.), 163 N.Y.S. 2d 538; *Orebaugh v. Antonious,* 190 Va. 829, 58 S.E. 2d 873.

The amount of the gross receipts from ticket sales for the scheduled concert is not a subject for speculation. The tickets had been sold and the money was in hand when defendants failed to perform. The trial judge found the gross receipts, less admission taxes, to have been $12,600.90. The evidence sustains the finding. It is, therefore, conclusive on appeal. *Construction Co. v. Crain and Denbo, Inc.,* 256 N.C. 110, 123 S.E. 2d 590. Having gross receipts in excess of $7,000.00, *by the terms of the contract* plaintiff was entitled to 50% of the proceeds and defendant to 50%. The amount of damages which the judge awarded plaintiff, $6,300.45, was 50% of the gross receipts.

Defendant contends that plaintiff's one-half should be reduced by $1,000.00, the amount which plaintiff agreed to pay the Y.M.C.A. for promoting the concert, but did not pay, and by deducting plaintiff's expected expenses, also. This contention is without merit.

Under the terms of this contract, the amounts which plaintiff expended or agreed to expend, in promoting, advertising, and preparing for the concert are of no concern to defendants. All such expenses came out of plaintiff's one-half of the gross receipts. Had defendants performed the contract, plaintiff would have received $6,300.45, one-half of the admission receipts, regardless of the expenses he might have incurred. That sum, and not his net profit, is therefore, the measure of plaintiff's damages in this case. *New York Water Corp. v. City of New York, supra; Orebaugh v. Antonious, supra.* Plaintiff's net profit, of course, will ultimately depend upon the amount of his expenditures in promoting the concert; the less expended, the more his profit. Judge Shaw correctly measured and assessed plaintiff's damages.

The judgment of the court below is
Affirmed.

HIGGINS, J., dissenting:

I am unable to agree with the trial court's conclusion of law "that the defendants were not prevented from performing the scheduled agreement within the meaning and intent of the (escape) clause in the contract as set out in paragraph 3 of the foregoing Findings of Fact." The contract provided: "The agreement of the employees to perform is subject to proven detention by sickness, accidents, or accidents to means of transportation, riots, strikes, epidemics, acts of God, or any other

legitimate conditions beyond the control of the employees (defendants)."

The trial court found these facts: The performance was to begin at 8:00 p.m. The plaintiff not only knew the troupe would travel by air from Baltimore to Roanoke, arriving at about 4:30 p.m., but actually had busses at the airport to meet them. When the plane arrived at Roanoke, federal authorities refused permission to land due to local weather conditions. The defendant's pilot, in this emergency, ascertained the nearest open airport was Charlottesville, approximately 100 highway miles from Roanoke. A bus trip to Roanoke would delay the performance at least an hour. In the meantime, the pilot ascertained weather conditions had improved at Roanoke sufficient to permit a landing there in time for the performance to begin on schedule. The defendants, in this emergency, (not of their making) chose to take to the air again in order to meet their obligation. The decision to fly would appear to be the wiser choice. After take-off an oil leak developed in one of the engines. Report of this trouble resulted in a federal order for the plane to return to Charlottesville.

*These accidents were to the means of transportation.* These findings made by the trial judge not only do not support the conclusion of law No. 1, but compel a contrary conclusion. The decision must rest squarely on the facts found. Additional facts may not be assumed. When the facts are not in dispute, decision becomes a matter of law, and a judgment not supported by the facts will be reversed. Strong's North Carolina Index, Vol. 1, Appeal and Error, § 21, pp. 93-94, n. 225. I vote to reverse.

Parker, J., joins in this dissenting opinion.