T. W. BROWN v. BRUCE L. SCISM

No. 8022SC558

(Filed 17 February 1981)

**1. Contracts § 27.2— grading contract — no ambiguity**

In an action for breach of a contract for grading to be performed on a new segment of a highway, the trial court correctly ruled and instructed the jury that the contract in question was not ambiguous where the contract, prepared by plaintiff, clearly provided that all dirt which would be needed to fill low areas could be found within the area designated in the contract, and defendant was not required to go outside the boundaries of the project in order to fulfill his agreement under the contract.

**2. Trial § 10.1— no expression of opinion by trial court**

In an action for breach of contract there was no merit to plaintiff's contention that the trial court erred in commenting during trial on its interpretation of the contract, since the court, in questioning a witness in order to clarify his answer, did not err in indicating that an area referred to by the witness was not within that designated by the terms of the grading contract and the court, in addition, instructed the jury to disregard his exchange with the witness and the lawyers; nor did the court err in submitting to the jury a diagram of the contract along with an oral explanation of its meaning, since the court, in grammatically diagraming the contract, merely simplified the contract, reducing it to its basic elements, and the court's use of the illustration was not suggestive or likely to confuse the jury.

**3. Contracts § 27.2— grading contract — no breach**

Evidence was sufficient to support the jury's finding that there was no breach of a grading contract where it tended to show that defendant agreed to complete grading work between two railroads; the contract provided that all the dirt necessary to fill low areas could be found between the two railroads; there was in fact insufficient dirt to fill the low areas; and defendant was therefore justified in leaving the job before the grading was completed.

**4. Contracts § 29.5— funds withheld from grading contractor — award of interest proper**

In an action to recover for breach of a grading contract where the jury found that there was no breach and the amount of money retained by plaintiff was due defendant under the contract, the trial court properly allowed defendant interest from the date he was entitled to the money held by plaintiff.

APPEAL by plaintiff from *Hairston, Judge.* Judgment filed 8 February 1980 in Superior Court, DAVIE County. Heard in the Court of Appeals 7 January 1981

This action is based on a contract for grading to be performed on a new segment of Interstate 85 in Davidson County, North Carolina. D. R. Allen & Sons, Inc. was the primary contractor for the portion of the highway running from Southern Railway to Abbotts Creek. Allen subcontracted the grading work on the project to T. W. ("Dock") Brown, plaintiff herein. Brown further subcontracted a smaller portion of the grading work, for the segment running from Southern Railway to Winston-Salem Southbound Railroad, to defendant, Bruce L. Scism. The entire project involved approximately three and one-half miles, of which approximately two and one-eighth miles were subcontracted to Scism. Brown and Scism entered into the following contract:

January 8, 1976
This is a contract between T. W. Brown and Bruce Sisim [*sic*]:

Furnish all labor, materials, and equipment necessary to accomplish the following items in strict accordance with the plans and specifications as prepared by the North Carolina State Highway Commission's standard specifications for roads and structures, and in particular Division II, for the unit prices listed herewith:

The yardage in this contract is between Winston South Bound Railroad and Southern Railway containing approximately one million cubic yards.

Unit cost  $0.50  Unclassified excavation,
                   Section No. 225
           1.15  Undercut excavation,
                   Section No. 225
           0.75  Benching excavation for embankment, Section No. 234
           0.75  Berm ditch construction,
                   Section No. 240

Payment will be made monthly on 90% of the completed work approved quantities of the Department of Transportation personnel less payroll submitted by you to us and

Brown v. Scism

approved by us, plus 16% of the total amount of your payroll. 16% will include:

| | |
|---|---|
| 5.85% FICA | 1% General Liability |
| 3.5% FUI and NCUI | Insurance |
| 4.5% Workmen's Compensation | 1.5% Overhead and Office |

Payment for Rock Excavation will be deducted on quantities agreed on by T. W. Brown's representative and D. R. Allen & Son's Representative.

You will be required to carry three (3) trainees on this project.

T. W. Brown
By: s/ T. W. Brown

Bruce Sisim
By: s/ Bruce L. Scism
Bruce Sisim

The record tends to show that shortly after the contract was executed, Scism moved equipment onto the project and commenced grading under supervision of Brown's superintendent. It later became apparent that there was insufficient dirt between the railroads to fill in the low areas of the highway. A dispute arose as to whether Scism was required under the contract to obtain the dirt necessary for filling low portions from outside the area designated in the contract.

Scism testified he was paid $31,322.98 by a check dated 27 August 1976 and Brown later stopped payment on that check. On 3 September 1976, Brown replaced the check with two checks, one of which was made out to Scism and Carolina Tractor. Carolina Tractor was paid from this check.

Scism left the project in early September 1976. Brown finished the grading work and retained $62,363.58 of funds owed to Scism for work he had completed. Brown sued for breach of contract and Scism counterclaimed, seeking recovery of the retainage.

Upon trial, the jury found that Scism did not breach the contract as alleged, and judgment was entered ordering that Scism recover the retainage with interest from 17 November 1976. From

this judgment, Brown appeals.

*Smith and Michael, by R. B. Smith, Jr. and Phyllis S. Penry, and Martin and Van Hoy, by Henry T. Van Hoy II and D. Duncan Maysilles, for plaintiff appellant.*

*Guller and Bridges, by Jeffery M. Guller, and Lamb and Bridges, by Forrest Donald Bridges, for defendant appellee.*

MARTIN (Harry C.), Judge.

[1] The dispute between the parties in this case is whether defendant Scism was required to move dirt onto his portion of the project from outside its boundaries in order to fulfill his agreement under the contract. Defendant contends that he fully complied with the contract by moving all the yardage that could be moved within the boundaries of the contract. Plaintiff asserts in his brief that under the agreement defendant was required to complete all the grading work, which entailed three major operations:

> (1) removing dirt to cut the high areas or "cuts" down to the correct grade for the highway (dirt removed from these areas is referred to as "excavation"); (2) placing dirt in the low areas and compacting it to bring these "fill" areas up to highway grade; (3) fine grading the entire project, bringing the area to with [*sic*] one-tenth of a foot of the highway grade as shown on the plans.

Plaintiff contends that defendant's failure to complete the job constitutes a breach of the contract.

Plaintiff's major contention in this appeal is that the trial court erred in ruling that the contract in question is not ambiguous, and in instructing the jury to that effect. By introducing evidence to define terms relating to highway construction and excavation, plaintiff sought to establish that the parties intended that defendant complete all the grading work for the portion of the project between Southern Railway to Winston-Salem Southbound Railroad, regardless of the source of fill. Defendant did not contradict plaintiff's definitions in accordance with their usage in the trade, nor did he deny that he left the project after performing what work he could that was within the boundaries delineated in the contract. Rather, defendant relied on the express language of the contract which stated: "The yardage in this contract is between Winston

South Bound Railroad and Southern Railway containing approximately one million cubic yards."

It is well established that where a contract is unambiguous its interpretation is a matter of law for the court, which must interpret the instrument as it is written. *See, e.g., Root v. Insurance Co.*, 272 N.C. 580, 158 S.E.2d 829 (1968); *Brinkley & Associates v. Insurance Corp.*, 35 N.C. App. 771, 242 S.E.2d 528 (1978). The express language contained in the contract, not what either party interprets the agreement to be, controls in the determination of its meaning. *Crockett v. Savings & Loan Assoc.*, 289 N.C. 620, 224 S.E.2d 580 (1976); *Nash v. Yount*, 35 N.C. App. 661, 242 S.E.2d 398, *disc. rev. denied*, 295 N.C. 91 (1978).

Plaintiff argues that technical words are to be interpreted as they are usually understood by experts in the profession or business, unless the context clearly indicates otherwise, citing 17 Am. Jur. 2d Contracts § 251 (1964). We agree with plaintiff that words such as unclassified excavation, undercut excavation, benching, and berm ditch have technical definitions indigenous to the grading business. Testimony as to the meaning of these and other terms was properly admitted into evidence without objection or contradiction by defendant. While these definitions apply to the type of work defendant was to perform under the contract, they do not, as plaintiff insists, render the contract ambiguous. Nor do they leave a question as to whether the yardage between the railroads included all the cuts required to be made, or whether the million yards between the railroads made reference to the necessary amount of fill, irrespective of whether the material was to be found within or without the area bounded by the tracks.

Defendant was to be paid according to number of cubic yards of dirt he moved. Plaintiff's witness Gilbert Church testified:

> In figuring the amount of money that was to be paid to Mr. Scism, I took the cubic yards that the State paid for dirt moved where he was working and multiplied fifty cents a yard times that. The fifty cent figure is the contract price he agreed to move it for.

It is apparent that when the contract was negotiated and drawn up, the number of cubic yards of dirt available for use as fill within the designated area was miscalculated. Plaintiff himself testified:

> It was my opinion at the time of the execution of the contract between myself and Mr. Scism that there was a million yards of dirt between the two railroads. I told him that's where I wanted him to work. I told him he wouldn't have to go off the State right of way to get the material. I never discussed with him that the area between the railroads was a borrow situation.

Yet plaintiff offers another portion of his testimony as evidence that he meant defendant would be able to obtain all the necessary dirt, or yardage, from within the boundaries of the entire project, which was the subject of the subcontract between D. R. Allen and Sons, Inc. and plaintiff, to which defendant was not a party:

> I told Bruce standing on the site of the job that he was to set his mind straight on the yardage. He wouldn't have to buy any dirt. All the jobs are either borrow or waste. They didn't run out even. You have to go out and borrow material. I told him he wouldn't have to go out and buy dirt anywhere, it was all on the job site. I did not tell him that the entire million yards he was to move was between the railroads. I told him he was to move a million yards, that is what it took in the fills. I told Bruce that he wouldn't have to worry about going off the complete highway project to buy any material, that this was a waste project. I told Bruce the yardage he was to move was between the railroads and that included fill and cutting. I told Mr. Scism there were approximately a million yards of dirt to move between the railroads.

This testimony is in direct contradiction to the express language of the contract. A party may not use parol evidence to create ambiguity where the terms of the contract are clear. *See Rhoades v. Rhoades,* 44 N.C. App. 43, 260 S.E.2d 151 (1979); *Hall v. Hall,* 35 N.C. App. 664, 242 S.E.2d 170, *disc. rev. denied,* 295 N.C. 260 (1978). We hold that the trial judge correctly ruled and instructed the jury that the contract in this case was not ambiguous. Additionally, the record reveals that plaintiff prepared the contract in question. Even when a contract contains ambiguities, such terms must be resolved against the party who prepared the document. *Contracting Co. v. Ports Authority,* 284 N.C. 732, 202 S.E.2d 473 (1974); *Jones v. Realty Co.,* 226 N.C. 303, 37 S.E.2d 906 (1946). Plaintiff's

Brown v. Scism

three assignments of error relating to ambiguity are overruled.

Plaintiff assigns error to the trial court's sustaining objections to questions directed to plaintiff's witnesses. These questions related to the amount and type of work remaining and to the issue of damages plaintiff alleged to have sustained by having to complete the project after defendant left the site. An appellant must not only show error, but must demonstrate that he was prejudiced by the alleged error. *See, e.g., Gregory v. Lynch*, 271 N.C. 198, 155 S.E.2d 488 (1967); *Burgess v. Construction Co.*, 264 N.C. 82, 140 S.E.2d 766 (1965). Plaintiff and his other witnesses were allowed to testify as to the remaining work and its cost. Because the similar evidence was introduced without objection and because the jury found defendant had not committed a breach, plaintiff has not been prejudiced by the omission of this testimony, even if it did constitute error. The assignment of error is overruled.

[2]  Plaintiff contends that the trial court erred in commenting during trial on its interpretation of the contract. He bases his exception on the following exchange:

The only place we had trucks hauling was cutting on the eastbound and hauling between the railroads.

COURT: Go on the eastbound?

A. I'm sorry, east side of the Winston-Salem Railroad.

MR. GULLER: OBJECTION as being outside of the boundaries of the contract. Motion —

COURT: Yes, sir. When you are clearly outside, you are clearly outside.

MR. SMITH: We ask that be put in the record.

COURT: It's in the record. Don't take in account the last answer of the witness, the lawyer and answers to my question trying to clarify what he was saying.

The court may question a witness in order to clarify his answer. *Andrews v. Andrews*, 243 N.C. 779, 92 S.E.2d 180 (1956); *Yelton v. Dobbins*, 6 N.C. App. 483, 170 S.E.2d 552 (1969). As the record indicates, the area referred to by the witness was not within that designated by the terms of the contract. In addition, the court instructed the jury to disregard the exchange. This assignment of

error is overruled.

Plaintiff assigns as error the court's submission to the jury of a diagram of the contract, along with an oral explanation as to its meaning. Plaintiff contends this constitutes an introduction of evidence by the court and an impermissible comment on the evidence.

A trial judge may not convey to the jury his opinion of the facts to be proven in any case. N.C. Gen. Stat. 1A-1, Rule 51(a); *Heath v. Swift Wings, Inc.*, 40 N.C. App. 158, 252 S.E.2d 526, *disc. rev. denied, appeal dismissed*, 297 N.C. 453 (1979). But, in *Bodenheimer v. Bodenheimer*, 17 N.C. App. 434, 435, 194 S.E.2d 375, 376, *cert. denied*, 283 N.C. 392 (1973), this Court enumerated two duties required of the trial judge under Rule 51: "(1) to declare and explain the law arising on the evidence presented in the case; and (2) to review such evidence to the extent necessary to explain the application of that law to the particular facts and circumstances of the case." The purpose of the court's charge is to eliminate irrelevant matters so that the jury may understand and appreciate the facts which determine the case. *Sugg v. Baker*, 258 N.C. 333, 128 S.E.2d 595 (1962); *Dunlap v. Lee*, 257 N.C. 447, 126 S.E.2d 62, 96 A.L.R.2d 754 (1962).

While admittedly a novel approach, we find no error in Judge Hairston's grammatically diagraming the contract. He merely simplified the contract, reducing it to its basic elements. He correctly set out the duties of both parties to the contract, adding to or deleting no material terms from the original document. As noted above, the interpretation of an unambiguous contract is a matter of law for the court to determine. This Court has cautioned that a trial judge should carefully guard his use of illustrations to avoid suggestions susceptible of inferences as to facts beyond those intended, or which may tend to confuse the jury. *Terrell v. Chevrolet Co.*, 11 N.C. App. 310, 181 S.E.2d 124 (1971). *Accord, Rea v. Simowitz*, 226 N.C. 379, 38 S.E.2d 194 (1946). We find no such suggestiveness nor likelihood of jury confusion in these instructions, and dismiss the assignment of error.

Plaintiff assigns error to four other portions of the judge's instructions to the jury. These portions are not properly set out in the record according to Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure. These rules are mandatory. *Craver v. Craver*, 298 N.C. 231, 258 S.E.2d 357 (1979); *In re Allen*, 31 N.C. App. 597,

Brown v. Scism

230 S.E.2d 423 (1976). In our discretion, we have carefully reviewed the entire charge to the jury and find no prejudicial error when examined contextually as a whole. *See Nance v. Long,* 250 N.C. 96, 107 S.E.2d 926 (1959); *Coletrane v. Lamb,* 42 N.C. App. 654, 257 S.E.2d 445 (1979).

**[3]** Plaintiff also assigns as error the denial of his motions for directed verdict, to set aside the verdict, and for a new trial. Plaintiff contends that defendant's own evidence, taken as true, showed defendant in fact breached the contract, entitling plaintiff to a verdict in his favor, citing *Nunn v. Smith,* 270 N.C. 374, 154 S.E.2d 497 (1967); *Arnold v. Charles Enterprises,* 264 N.C. 92, 141 S.E.2d 14 (1965). Plaintiff would have us hold that defendant's admitted failure to complete the grading work between the two railroads unquestionably established a breach. A breach of contract has been described as an unjustified failure to perform a promise that is part of the contract. N.C.P.I.—Civil 510.10. *See also* Black's Law Dictionary 235 (4th ed. rev. 1968); *Sechrest v. Furniture Co.,* 264 N.C. 216, 141 S.E.2d 292 (1965). Defendant presented evidence that tends to show that he completed the work he agreed to perform under the contract or that he was justified in leaving the job before the grading was completed. The court properly instructed the jury on breach of contract, and the jury found no breach.

**[4]** Last, plaintiff assigns error to the court's entry of judgment and assessment of interest from 17 November 1976. Plaintiff argues that because there was no finding of breach committed by plaintiff and because plaintiff had rightfully retained the funds under the contract, the imposition of interest on the retainage is punitive in nature. We do not agree. The jury found no monies were due plaintiff from defendant. Therefore, there was no set-off to consider. The amount of the retainage was due defendant under the contract. N.C.G.S. 24-5 provides for interest on money due by contract of any kind. In *Rose v. Materials Co.,* 282 N.C. 643, 671, 194 S.E.2d 521, 540, 67 A.L.R.3d 1, 25 (1973), our Supreme Court noted that "the trend is toward allowance of interest in almost all types of cases involving breach of contract." Here, the jury did not determine the amount owed defendant. Rather, in his complaint plaintiff admitted holding defendant's funds. Plaintiff had the use and benefit of defendant's money for more than four years during the litigation of this suit. The trial judge properly allotted interest from the date defendant was entitled to those funds. The assignment of error

is overruled.

In this trial we find

No error.

Chief Judge MORRIS and Judge WHICHARD concur.