IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-37

No. 166A21

Filed 18 March 2022

IN THE MATTER OF: J.C. and D.C.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 29 March 2021 by Judge Kristina Earwood in District Court, Swain County. This matter was calendared for argument in the Supreme Court on 18 February 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Justin B. Greene for petitioner-appellee Swain County Department of Social Services.*

*Womble Bond Dickinson (US) LLP, by Jonathon D. Townsend and Theresa M. Sprain, for appellee Guardian ad Litem.*

*Edward Eldred for respondent-father.*

*J. Lee Gilliam for respondent-mother.*

MORGAN, Justice.

¶ 1    Respondent-parents appeal from an order terminating their parental rights to two of their children: "Dylan," born on 15 February 2009 and "Julia," born on 23 September 2005.[1] Under our legal precedent, it is clear that the order filed by the

---

[1] All children mentioned in this opinion are identified by pseudonyms to protect their privacy.

trial court in this case contains an incorrect statement of the applicable standard of proof, leaving for this Court's resolution only the issue of the proper remedy for this error. After reviewing the pertinent precedent, we conclude that the trial court order must be reversed and that the case should be remanded to the trial court for further proceedings.

## I.     Factual and Procedural Background

Respondents are the parents of three children, including Dylan and Julia, who are the subjects of the termination of parental rights order under review in this matter. The Swain County Department of Social Services (DSS) became involved with respondents' family household and investigated it in the spring of 2015 and January 2016 based upon concerns regarding the sanitary conditions of the family home and the children's receipt of an appropriate education after the children were withdrawn from their schools. These case investigations were closed with no services recommended for respondents or their children. However, DSS became involved with respondents and their household again after concerns were registered about the welfare of the child of another family who began to reside in respondents' home. In early 2016, respondents allowed three minor siblings unrelated to respondents— "Ryan," "Charlotte," and "Ava"—to live in respondents' household in order to help those children's parents to improve their ability to care for their children. One of the parents was dealing with a substance abuse issue and the other parent was a

registered sex offender. On 4 April 2016, Ryan, who at the time was four years of age, was admitted to a hospital emergency room with life-threatening, non-accidental injuries which required his transport to a pediatric intensive care unit. When brought to the hospital, Ryan was alleged to have been "unresponsive," with a temperature of 87 degrees, a pulse rate of 40, and to have been "covered with bruises, cuts and lesions." Ryan "was given Narcan for overdose symptoms[ ] and immediately responded to th[at] treatment." During various interactions and interviews which were conducted as part of the investigation which DSS undertook subsequent to Ryan's hospital admission, respondents' three children described a number of incidents which could be deemed to constitute physical assaults and sexual abuse by respondents against all of the children who were residing in respondents' home: respondents' children, Ryan, and Ryan's siblings.[2]

¶ 3     As a result of Ryan's injuries and resulting condition, on 5 April 2016 DSS filed petitions alleging, *inter alia*, that Ryan was an abused juvenile and that Ryan, Ryan's two siblings and respondents' three children—including Dylan and Julia—were neglected juveniles. DSS also took custody of all six children who were living in respondents' home at the time. On 20 July 2017, the trial court entered an order

---

[2] Respondents were subsequently indicted for, *inter alia*, felony child abuse against Ryan.

which, *inter alia*,[3] adjudicated respondents' children as neglected juveniles. On 22 January 2018, the trial court entered an initial order of disposition which established various components of respondents' case plans with which they were to comply, relieved DSS of further efforts to reunify the children with respondents and continued the children's placement outside respondents' home. In November 2018, upon appeal by respondents, the Court of Appeals affirmed the adjudication order but reversed the disposition order in part, specifically to the extent that it relieved DSS of further reunification efforts and eliminated reunification from the children's permanent plan and remanded the matter to the trial court for further proceedings. *See In re D.C.*, 262 N.C. App. 372 (2018) (unpublished). Following a hearing upon remand in July 2019, the trial court entered a new disposition order setting the primary permanent plan as reunification with a secondary plan of adoption; conducted permanency planning hearings; and entered subsequent permanency planning orders. In December 2019, DSS requested that Julia's and Dylan's primary plans be changed to adoption. At a permanency planning hearing in January 2020, the trial court announced that it would change Julia's and Dylan's permanent plans to adoption.[4]

---

[3] The adjudication order also adjudicated Ryan as an abused and neglected juvenile and his siblings as neglected juveniles.

[4] For unknown reasons, the written order formally making the change was not filed until 2 February 2021. In any event, the order was not appealed.

¶ 4        On 10 June 2020, DSS filed a petition to terminate respondents' parental rights to Dylan and Julia.[5] The petition advanced three grounds to support the termination of respondents' parental rights to these juveniles: neglect, a willful failure to make progress correcting removal conditions, and a willful failure to pay the costs of care. *See* N.C.G.S. § 7B-1111(a)(1), (2), (3) (2021). Among other contentions, the petition alleged that: (1) respondents' criminal charges remained pending; (2) respondents had not completed their case plans; (3) both children were diagnosed with post-traumatic stress disorder as a result of their time spent with respondents; and (4) the children's therapists recommended no contact between the children and respondents. DSS asked the trial court to find that grounds existed to terminate the parental rights of respondents "beyond a reasonable doubt."

¶ 5        Following a hearing on the petition for termination of parental rights on 2 February 2021, the trial court directed DSS to make findings of fact "based upon the evidence presented," and the trial court announced that it would find "grounds one and two, specifically neglect and traumas and foster care." At the end of the disposition phase of the proceedings, the trial court again directed DSS to make findings of fact "based upon the evidence presented" and the trial court announced that it would find "it is in the best of to terminate [sic] the parental rights of the

---

[5] Respondents' third child was also the subject of a TPR petition, but that petition was dismissed by DSS prior to the hearing because the juvenile was expected to reach the age of eighteen before the conclusion of the matter.

respondents." The trial court did not state at any point during the hearing or during the trial court's announcement of its determination that grounds existed to terminate respondents' parental rights that it was employing the "clear, cogent, and convincing" standard of proof which applies in termination of parental rights proceedings. The trial court subsequently entered a written order on 29 March 2021 which terminated respondents' parental rights to Dylan and Julia. The trial court's written order included a statement that the trial court made its findings of fact "by a preponderance of the evidence." Respondents appeal.[6]

## II.    Analysis

The Juvenile Code in North Carolina mandates that a trial court's adjudicatory findings of fact in a termination of parental rights order "shall be based on clear, cogent, and convincing evidence." N.C.G.S. § 7B-1109(f) (2021); *see also In re B.L.H.*, 376 N.C. 118, 124 (2020). Clear, cogent, and convincing evidence is an intermediate standard of proof which is "greater than the preponderance of the evidence standard required in most civil cases." *In re Montgomery*, 311 N.C. 101, 109–10 (1984) (citing

---

[6] Counsel for DSS filed a motion in this Court on 28 September 2021 seeking leave to file a motion to "correct" the termination of parental rights order at issue here by means of remand to the trial court for a "correction" of the statement regarding the trial court's standard of proof employed in making findings of fact. Counsel for DSS stated that, at the direction of the trial court, counsel drafted the judgment for termination of parental rights by "copying and pasting" passages from prior orders and thereby inadvertently included references in the trial court's order which stated that "preponderance of the evidence" was the standard of proof employed in these termination proceedings. This Court denied the DSS motion on 20 December 2021.

*Santosky v. Kramer*, 455 U.S. 745, 769 (1982)). The statutory burden of proof by clear, cogent, and convincing evidence as provided in N.C.G.S. § 7B-1109(f) also protects a parent's constitutional due process rights as enunciated by the United States Supreme Court in *Santosky*. 455 U.S. at 747–48 ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence."); *see also Adams v. Tessener*, 354 N.C. 57, 63 (2001) (holding that a trial court's determination that "a parent's conduct is inconsistent with his or her constitutionally protected status must be supported by clear and convincing evidence."). Although the "clear, cogent, and convincing" burden of proof in termination of parental rights proceedings is a firmly rooted standard, this Court has necessarily addressed the considerations which a trial court must employ and incorporate in its determinations so as to demonstrate the trial court's compliance with the "clear, cogent, and convincing evidence" principle enunciated in N.C.G.S. § 7B-1109(f).

¶ 7        In *In re B.L.H.*, this Court held "that a trial court does not reversibly err by failing to explicitly state the statutorily-mandated standard of proof in the written termination order if . . . the trial court explicitly states the proper standard of proof in open court at the termination hearing." 376 N.C. at 120–21. In reaching this result, we examined the statutory language utilized in N.C.G.S. § 7B-1109(f) that "all

findings of fact shall be based on clear, cogent, and convincing evidence" and concluded "that the statute implicitly includes a requirement that the trial court announce the standard of proof it is applying in making findings of fact in a termination proceeding," both to avoid rendering portions of the statute "useless" and to permit a reviewing court to ensure that the proper standard of proof was utilized by the trial court. *Id.* at 122–24. We expressly declined, however, to extend this requirement that a trial court "announce" the proper standard of proof to a mandate that the standard be explicitly stated in the trial court's written termination of parental rights order. *Id.* at 126. Thus, "the trial court satisfies the announcement requirement of N.C.G.S. § 7B-1109(f) so long as it announces the 'clear, cogent, and convincing' standard of proof *either* in making findings of fact in the written termination order or in making such findings in open court." *Id.*

¶ 8        In *In re M.R.F.*, another case involving a termination of parental rights appeal, this Court considered the circumstance in which the trial court did not make an announcement either in its written order or in open court about the standard of proof that it applied to make findings of fact. *In re M.R.F.*, 378 N.C. 638, 2021-NCSC-111, ¶ 10. Citing our decision in *In re B.L.H.*, this Court held that the trial court failed to comply with the statutory mandate, while observing that

> due to petitioner's failure to present sufficient evidence to support any of the alleged grounds for the termination of the parental rights of respondent-father, we are compelled to simply, *without remand,* reverse the trial court's order.

> *See Arnold v. Ray Charles Enters., Inc.*, 264 N.C. 92, 99
> (1965) ("To remand this case for further findings, however,
> when defendants, the parties upon whom rests the burden
> of proof here, have failed to offer any evidence bearing upon
> the point, would be futile."); *Cnty. of Durham v. Hodges*,
> 257 N.C. App. 288, 298 (2018) ("Since there is no evidence
> to support the required findings of fact, we need not
> remand for additional findings of fact. Instead, we
> reverse.").

*Id.* at ¶ 12 (extraneity omitted).

All of the parties in the present case agree that the trial court here, unlike the trial court in *In re B.L.H.*, did not announce in open court that it was applying the correct standard of proof. Moreover, unlike the trial court's written order in *In re M.R.F.* which was silent on the burden of proof utilized by the trial court, the trial court's written order purporting to terminate respondents' parental rights here did not simply fail to state the standard of proof, but overtly states the *wrong* standard of proof—a standard which is not only lesser than that required by statute but one which has also been held to be constitutionally insufficient to support the permanent severance of a parent-child relationship. For this reason, each respondent argues that the termination of parental rights order cannot stand. Likewise, the guardian ad litem candidly acknowledges that "the trial court's order would not be sufficient under due process or state statutory requirements to terminate the parental rights of [r]espondents" to Dylan and Julia.

¶ 10        However, DSS argues that "[w]hile the written order setting forth the grounds for termination of parental rights states that the court's findings were made upon a preponderance of the evidence, *it appears from examination of the record that the court applied a higher standard in reaching its decision . . . .*" (Emphasis added). Specifically, DSS contends that

> the [trial] court's incorporation of the adjudication order's findings of fact and the [trial] court's finding that termination of the respondent[s'] parental rights was in the best interest of the juveniles, "beyond a reasonable doubt," indicate that the [trial] court applied a higher standard of proof than that set forth in [the] opening decree of the written order.
>
> . . .
>
> The [trial] court . . . applied the higher "beyond a reasonable doubt" standard when it determined that termination of parental rights was in the juveniles' best interest, and specifically mentioned that it had found that two grounds existed for the termination of parental rights, *within the same sentence.*

Thus, according to DSS, "[w]hen viewed in its entirety, the record indicates that the [trial] court applied a higher standard of proof than what is reflected in the order setting forth termination grounds." A gaping omission in the assertions of DSS is the agency's failure to explain the correctness of its position in the face of this Court's holding in *In re B.L.H.* that a trial court must "announce[ ] the 'clear, cogent, and convincing' standard of proof *either* in making findings of fact in the written termination order or in making such findings in open court." 376 N.C. at 126.

Conversely, DSS cites no legal authority supporting any latitude that this Court possesses to allow us to infer an announcement by the trial court in the case proceedings or the termination order that it applied the clear, cogent, and convincing standard of proof when such an announcement plainly did not occur. DSS also fails to directly address the arguments by respondents—or the candid concession by the guardian ad litem—that our holdings in *In re B.L.H.* and *In re M.R.F.* make clear that the trial court's written order here is insufficient to terminate respondents' parental rights and therefore cannot be affirmed. As a result, pursuant to the precedent established by this Court, the trial court committed statutory error and the termination of parental rights order in the instant case cannot stand.

¶ 11        Having determined that we must set aside the trial court's termination of parental rights order due to its mistaken employment of the wrong standard of proof, this Court turns to the matter which consequently arises concerning the appropriate means by which to implement corrective measures. The parties differ in their positions regarding the appropriate remedy. Respondents both contend that the termination of parental rights order should be vacated, thus ending this case. The GAL and DSS[7] maintain that the proper action for this Court is to remand the matter

---

[7] In addition to its primary position that the trial court's termination of parental rights order should be affirmed, DSS, in a conclusory fashion, asks in the alternative that, if this Court concludes that the order cannot be affirmed, then the matter should be remanded to the trial court for, *inter alia*, clarification of the trial court's standard of proof.

to the trial court for the entry of findings of fact which are made by the correct standard of clear, cogent, and convincing evidence, or for the trial court to clarify the standard of proof employed in making its findings of fact.

¶ 12    In support of their request for this Court to vacate the termination of parental rights order, respondents concede that where a trial court makes findings of fact without announcing the standard of proof employed to consider the evidence, the proper disposition is to vacate the order and remand for findings of fact under the proper standard, *see David N. v. Jason N.*, 359 N.C. 303, 307 (2005) ("The trial court, however, failed to apply the clear and convincing evidence standard . . . , and therefore this case must be remanded for findings of fact consistent with this standard of evidence."), unless the petitioner has failed to present evidence which could potentially support such findings of fact under the proper standard of proof, such that remand would be futile. *See In re M.R.F.*, 378 N.C. 638, 2021-NCSC-111, ¶ 10. Respondents cite *Santosky* for the proposition that, where a trial court "makes findings of fact based on an affirmatively-stated, constitutionally-deficient standard of proof, the remedy is to simply vacate the order" and further contend that the trial court's error here prejudiced respondents. *See Santosky*, 455 U.S. at 770.

¶ 13    The GAL and DSS, citing, *inter alia*, *In re M.R.F.*, contend that the record here would fully support the findings of fact contained in the termination of parental rights order even under the proper standard of "clear, cogent, and convincing" evidence and

that therefore the proper action for this Court to take is to remand the matter for the entry of findings of fact made under the statutory standard.

¶ 14      We first address respondent-father's reliance on *Santosky*. In that case, the United States Supreme Court majority, in holding that the "clear and convincing" evidence standard of proof was necessary to comply with federal due process protections, did not discuss the evidence before the New York state court which was considering the termination of parental rights matter from which the appeal was taken.[8] We therefore find that *Santosky* does not control the specific issue regarding the disposition in this case, because the present case fully falls within the parameters of North Carolina case law precedent which has been generated pursuant to N.C.G.S. § 7B-1109(f) regarding the pivotal impact that the record evidence under appellate review has in the resolution of an appeal where a trial court has committed error regarding the standard of proof. *See In re M.R.F.*, 378 N.C. 638, 2021-NCSC-111, ¶ 26 (holding that "the evidence in the record of this case is insufficient to support findings which are necessary to establish any of the statutory grounds for termination . . . . upon which the trial court could expressly announce the proper application of the standard of proof upon remand to it by this Court"); *see also In re Church*, 136

---

[8] The dissenting opinion—in holding, *inter alia*, that the due process protections contained in the federal constitution did not mandate the "clear and convincing" standard in termination of parental rights proceedings—did look to the evidence in the case at bar and appears to suggest that the parents could not have prevailed even under the "clear and convincing" standard. *Santosky*, 455 U.S. at 781–85 (Rehnquist, J. dissenting).

N.C. App. 654, 658 (2000) (holding that where the standard of proof is not announced by the trial court but the record contains evidence which *could* support findings of fact supporting a ground for termination of parental rights under the appropriate standard, the case should be remanded for application of the proper standard of proof by the trial court). We further note that under *In re M.R.F.*, for this Court to remand in a termination of parental rights matter, the record should reflect that the trial court has "a sufficient foundation upon which the trial court could expressly announce the proper application of the standard of proof." *In re M.R.F.*, 378 N.C. 638, 2021-NCSC-111, ¶ 26.

¶ 15    In fashioning the remedy to rectify the trial court's erroneous termination order, it is worthy of reiteration that in *In re M.R.F.*, the trial court did not announce the standard of proof that it was utilizing in its determination, while in the current case, the trial court announced the employment of a standard of proof which happened to be incorrect. Despite the difference, in either circumstance, upon remand a trial court must review and reconsider the record before it by applying the clear, cogent, and convincing standard to make findings of fact. Accordingly, we conclude that remand of this case to the trial court for such an exercise is appropriate, unless "the record of this case is insufficient to support findings which are necessary to establish *any* of the statutory grounds for termination." *See id.*

Resultingly, we lastly consider whether the record here could support the grounds for termination of parental rights contained in the petition filed by DSS. Without commenting on the amount, strength, or persuasiveness of the evidence contained in the record, we merely conclude that we cannot say that remand of this case for the trial court's consideration of the evidence in the record utilizing the proper "clear, cogent, convincing" standard of proof would be "futile," *In re M.R.F.*, 378 N.C. 638, 2021-NCSC-111, ¶ 12 (quoting *Arnold*, 264 N.C. at 99), so as to compel us to conclude that "the record of this case is insufficient to support findings which are necessary to establish *any* of the statutory grounds for termination." *Id.* at ¶ 26. Therefore, we reverse the trial court's order terminating respondents' parental rights to Dylan and Julia and remand the matter to the trial court for its consideration of the record before it in order to determine whether DSS has demonstrated by clear, cogent, and convincing evidence that one or more statutory grounds exist to permit termination of parental rights.

REVERSED AND REMANDED.