NORTH CAROLINA STATE BAR v. WESLEY F. TALMAN, JR.

No. 8210NCSB499

(Filed 7 June 1983)

1. Evidence § 22.1— testimony from former proceeding—admissibility

The Disciplinary Hearing Commission of the North Carolina State Bar did not err in receiving into evidence the testimony of two witnesses given in a Florida lawsuit brought by the personal representative of an estate where the former suit involved much of the same subject matter as that of the disciplinary hearing and where defendant had an opportunity and similar motive to cross-examine the two witnesses at the Florida trial.

2. Evidence § 22.1— copies of final orders from previous proceedings—properly admitted into evidence

The Disciplinary Hearing Commission of the State Bar properly considered final orders from previous proceedings where the Commission admitted the judgments for the limited purpose of showing that the proceedings did occur and for the limited purpose of showing who filed a previous petition, when it was filed, and the grounds listed on the petition.

3. Attorneys at Law § 11— disciplinary hearing—questions by Commission members proper

The members of a Disciplinary Hearing Commission properly questioned defendant since it was within the Commission's discretion to ask questions of the witnesses for the purpose of clarifying matters material to the issues.

4. Attorneys at Law § 12— findings and conclusions of Disciplinary Hearing Commission supported by evidence

The findings and conclusions by the Disciplinary Hearing Commission of the State Bar that defendant had violated certain disciplinary rules by his con-

duct in (1) fraudently obtaining stock certificates and procuring a power of attorney for their transfer, (2) knowingly making a false statement when testifying he had paid estate taxes which had not been paid, (3) counseling his clients in illegal conduct in procuring stock certificates and resisting efforts of a guardian in another state to have them returned, (4) knowingly using his false testimony about having paid estate taxes to acquire set-off in the amount due, (5) failing to maintain records of a former client's property coming into his possession and in failing to render appropriate accounting to her personal representative, and (6) falsely testifying before a Florida court regarding estate taxes and thus perpetrating a fraud upon that court were supported by substantial and competent evidence.

APPEAL by defendant from the Hearing Committee of the Disciplinary Hearing Commission of the North Carolina State Bar (hereinafter Commission). Notice of disbarment entered 16 October 1981. Heard in the Court of Appeals 17 March 1983.

The North Carolina State Bar (hereinafter Bar) received a complaint about the actions of defendant, a member of the North Carolina State Bar, related to his representation of two sisters, Elizabeth Campbell Gage and Lottie Jean Campbell Fletcher. As a result, the Bar filed this disciplinary action against defendant.

Following a hearing under G.S. 84-28 *et seq.*, an order was entered disbarring defendant from further practice of law.

Defendant appealed.

*A. Root Edmonson for The North Carolina State Bar.*

*Wesley F. Talman, Jr., pro se.*

BRASWELL, Judge.

The issues on appeal raised by defendant's 25 assignments of error involve whether the Commission erred in considering certain evidence, in questioning defendant during the hearing, in making many of the findings of fact and conclusions of law included in the order, and in entering its order of disbarment. We have considered each of the errors assigned and, for the reasons that follow, we affirm the Commission's decision.

Evidence presented by stipulation of the parties and at the disciplinary hearing tended to show the following:

Defendant was admitted to the North Carolina State Bar in 1973 and maintained a law office in Asheville. He was retained

prior to November 1975 by Mrs. Fletcher and Mrs. Gage to handle various legal matters for them. Defendant was advised about problems his two clients were having in caring for their 96-year-old aunt, Mrs. Etta Houston, a resident of Florida. In November 1975, without defendant's knowledge, Mrs. Fletcher commenced a proceeding in Florida to determine the competency of her aunt.

In late November 1975, defendant travelled at the request of Mrs. Fletcher and Mrs. Gage to the St. Petersburg, Florida, home of Mrs. Houston. Defendant knew that Mrs. Houston was very old, was hard of hearing, and had poor eyesight. During this visit, defendant obtained from Mrs. Houston stock certificates she owned, valued at more than $100,000.00, which she had signed on the back. Defendant returned to Asheville with the certificates and deposited them for safekeeping with an Asheville brokerage.

Defendant returned to St. Petersburg in December 1975 at his clients' request, accompanied by his secretary. During this visit in Mrs. Houston's home, she executed to defendant a power of attorney for transfer of the stock certificates, and her signature was acknowledged before defendant's secretary, a notary public in Florida. The stocks later were transferred in equal shares to Mrs. Fletcher and her husband, Carl Fletcher, and to Mrs. Gage and Russell Campbell, brother of Mrs. Gage and Mrs. Fletcher. They transferred the stocks into two Clifford trusts for the benefit of Mrs. Houston, with the stocks to revert back in trust to the donors upon Mrs. Houston's death. By the time of this visit, the defendant considered Mrs. Houston to be his client also by virtue of the preparation and execution of the two trusts created from her property.

At the hearing before the Commission, defendant denied any knowledge of the Florida competency proceedings against Mrs. Houston before January 1976 and was adamant that he had had no indication of "any problem with this lady at all" before that date. Defendant testified that upon learning of the question surrounding Mrs. Houston's mental condition, he urged Mrs. Gage and Mrs. Fletcher to return the stock certificates. He agreed, however, to work for retention of the certificates when his clients agreed to indemnify him.

Mrs. Houston was adjudged incompetent at the Florida competency proceedings in January 1976.

Dr. Whitman H. McConnell, the Florida psychiatrist who diagnosed Mrs. Houston's condition, testified that he examined her in November 1975 and found her suffering from senility due to acute cerebroarteriosclerosis and from terminal rectal cancer. Mrs. Houston showed signs of mental confusion, memory defects, and disorientation as to time and place. The psychiatrist's opinion was that Mrs. Houston was incapable of caring for herself and that she was incompetent to make a judgment for disposition of her property or execution of her power of attorney. Dr. E. I. Biddison, the Florida physician who examined Mrs. Houston in December 1975, testified at one of the Florida trials that he found Mrs. Houston to be incompetent and that her condition had most likely existed for some months prior to his first examination of her on 12 December 1975.

In March 1976 Mrs. Houston was removed from a Florida nursing home by Mrs. Fletcher and brought to Asheville. She died two weeks later, on 17 March 1976.

Following Mrs. Houston's death, a civil lawsuit was instituted in Florida against defendant, both individually and as trustee, and against Mrs. Fletcher and Mrs. Gage by the personal representative of Mrs. Houston's estate, seeking recovery of the stocks. During that trial defendant testified he had prepared an estate tax form in June 1977 and had written a check for $10,638.30 out of his trust account for payment of federal estate taxes of Mrs. Houston's estate. When final judgment was rendered in the Florida lawsuit in October 1977, defendant was given a $10,638.30 credit. The Internal Revenue Service, however, had no record of any estate taxes being paid or of any estate tax forms being received. Defendant was unable to produce any evidence at the hearing before the Commission of having mailed the estate taxes and produced no cancelled check showing payment as claimed.

Mrs. Houston's personal representative instituted a civil action against defendant in Florida in November 1978 seeking recovery of the $10,638.30 credit, after it was learned that the federal estate tax return had not been filed. When interrogatories served on defendant's Florida attorney were never answered, default judgment in the amount of the estate taxes was entered against defendant in October 1979 as a discovery sanction.

Defendant received a Letter of Notice from the Grievance Committee of the Bar on 17 October 1978 regarding complaints about his failure to pay the estate taxes. The letter requested that he answer within 15 days. After defendant received an extension of time to respond, a response was received by the Bar on 9 January 1979. Further information requested by the Bar on 2 February 1979 was provided by defendant by letter of 10 April 1979. A second Letter of Notice was sent to defendant by registered mail in November 1979 concerning defendant's conduct in obtaining the stock certificates and power of attorney from Mrs. Houston and in assisting his clients in fraudulent conduct. A follow-up letter received by defendant on 19 May 1980 requested a response to the second Letter of Notice. However, no written response was ever received by the Bar on the second Letter of Notice, although defendant delivered affidavits from Mrs. Gage and Mrs. Fletcher to the Bar. At the hearing before the Commission, defendant offered as explanation for his tardy responses and his failure to respond that he had been ill and that his law office had relocated.

The Commission made findings of fact and concluded that defendant had violated the following disciplinary rules by his conduct as set out below: DR 1-102(A)(4) by fraudulently obtaining the stock certificates and in procuring a power of attorney for their transfer; DR 7-102(A)(5) by knowingly making a false statement when testifying he had paid estate taxes which had not been paid; DR 7-102(A)(7) by counseling his clients in illegal conduct in procuring the stock certificates and resisting efforts of the guardian in Florida to have them returned; DR 7-102(A)(4) by knowingly using his false testimony about having paid the estate taxes to acquire set-off in the amount due; DR 9-102(B)(3) and (4) by failing to maintain records of Mrs. Houston's property coming into his possession and in failing to render appropriate accounting to her personal representative; DR 7-102(B)(1) by falsely testifying before a Florida court regarding the estate taxes and thus perpetrating a fraud upon that court. The Commission also concluded that defendant violated G.S. 84-28(b)(3) in failing to answer the second Letter of Notice sent to him.

I

Defendant's assignments of error 1 through 6 relate to several evidentiary questions.

[1] Defendant first argues that the Commission erred in receiving into evidence the testimony of Fred Bryson and Margaret Brady from the Florida proceeding against defendant. Defendant's contention is that the Commission failed to show the witnesses were incapacitated or were unavailable to testify at the disciplinary hearing.

The testimony of a witness at a former trial or judicial hearing may be given in evidence at a subsequent trial:

> "(2) If the proceeding at which he testified was a former trial of the same cause, or a preliminary stage of the same trial, or the trial of another cause involving the same issue and subject matter as the one to which his evidence is directed at the present trial. [or]
>
> (3) If the parties at the former trial were the same as those at the present trial, or in privity with them, or if the situation was such that the party against whom the evidence was then offered had the same opportunity and motive to cross-examine the witness as the party against whom it is now offered has at the present trial."

1 Stansbury's N.C. Evidence § 145 (Brandis rev. 1973), quoted in *State Bar v. Frazier*, 269 N.C. 625, 632, 153 S.E. 2d 367, 371-72, *cert. denied*, 389 U.S. 826, 19 L.Ed. 2d 81, 88 S.Ct. 69 (1967).

The lawsuit brought against defendant by the personal representative of Mrs. Houston's estate clearly involved much of the same subject matter as that of the disciplinary hearing. Defendant had an opportunity and similar motive to cross-examine both Judge Bryson and Mrs. Brady at the Florida trial. Thus, we hold that the criteria set out in *State Bar v. Frazier, supra*, are met and that the testimony was admissible at the hearing.

Further, the record discloses that Bryson was a judge in St. Petersburg, Florida, and that Mrs. Brady's address was unknown, demonstrating their unavailability for the hearing in North Carolina. Defendant had had notice since at least 17 August 1981 that the Commission intended to submit the testimony of these two witnesses at trial, yet he apparently made no attempt to depose them in Florida. He cannot now complain about admission of their testimony.

[2]  Defendant next argues that the Commission improperly admitted into evidence certified copies of the final orders from the incompetency proceedings of Mrs. Houston, from the 1977 Florida trial in which the estate recovered the transferred stocks, and from the 1979 Florida trial in which the estate obtained a judgment against defendant for the estate taxes. Defendant also contends that it was error for the Commission to receive into evidence discovery documents from the 1978 Florida trial.

We find that all of these documents were properly considered by the Commission. Testimony from the incompetency proceeding was excluded by the Commission's pretrial order, and none of the testimony was introduced at the hearing. The Bar introduced the final judgment from the incompetency proceeding for limited purposes of showing who filed the petition, when it was filed, and the grounds listed. The final judgments from the two Florida trials were not introduced as evidence of the facts found in the judgments, although plenary competent evidence was presented by the Bar to support these findings. The Commission clearly stated that the judgments were admitted for the limited purpose of showing that the proceedings did occur. No prejudice resulted from the admission of these judgments. Even if their admission was error, it is presumed that a court—in this case, the Commission—sitting as both judge and jury, did not consider the incompetent evidence. *Anderson v. Insurance Co.*, 266 N.C. 309, 145 S.E. 2d 845 (1966).

We have considered defendant's remaining two assignments of error dealing with evidentiary matters and find them to have no merit.

## II

[3]  Defendant further contends that the questions of the Commission members to him amounted to a "vigorous cross examination . . . [with] the effect of converting the proceedings into a general inquisition." He maintains that the "rapid fire" manner in which these questions were directed to him denied him the right to a fair and impartial hearing.

The Commission sat as both judge and jury in this proceeding, much as a trial judge in Superior Court hears nonjury trials. It was within the Commission's discretion to ask questions

of the witnesses for the purpose of clarifying matters material to the issues. *Andrews v. Andrews*, 243 N.C. 779, 92 S.E. 2d 180 (1956). It is the trial judge's privilege as well as his duty to ask questions of witnesses when necessary for the purpose of clarification and to ascertain the truth. *Everette v. Lumber Co.*, 250 N.C. 688, 110 S.E. 2d 288 (1959). Under the circumstances of this case, we find no prejudicial error in the Commission's questioning of defendant.

## III

Defendant contends in his next six arguments that the Commission erred in making the following findings of fact:

"3. Mrs. Houston, during the Defendant's visits with her during November and December of 1975, was suffering from carcinoma of the rectum and had reached a progressive state of senility and was not capable of lucid intervals.

4. From November 24, 1975 until her death in March, 1976, the Defendant considered himself to be Mrs. Houston's attorney as well as attorney for her nieces, Mrs. Gage and Mrs. Fletcher. At the time the Defendant took the shares of stock from Mrs. Houston to Asheville, North Carolina, Defendant made no attempt to inquire as to the relative portion of Mrs. Houston's estate represented by the stock. The Defendant made no attempt to determine whether or not Mrs. Houston had a current will in effect at that time or the persons to whom property would be distributed under Mrs. Houston's will. The Defendant was aware of controversy in Mrs. Houston's family between his clients, Mrs. Houston's nieces, and Mrs. Houston's stepdaughter. The Defendant did not contact the attorney that represented Mrs. Houston prior to November of 1975.

. . . .

7. The Defendant testified both before this Committee and in the trial in Pinnellas County, Florida that his first knowledge of the competency proceeding involving Mrs. Houston was in January of 1976 when he received a telephone call from a representative of a bank which had been appointed as Mrs. Houston's guardian. Before this Committee the Defendant vigorously denied having made the telephone

call which is described in the testimony of Margaret E. Brady, Plaintiff's Exhibit E-4. The Defendant was a party to the action in which the testimony was given and was represented by counsel, such testimony was admitted without objection or cross-examination of the witness, and the subject matter of the action obviously involved the pending matters before this Committee. Notwithstanding the Defendant's vigorous denial before this Committee that he made the telephone call to Margaret E. Brady, the Defendant admitted that he actually became aware of the incompetency proceedings against Mrs. Houston during late January of 1976 and, at that time, advised his clients, Mrs. Gage and Mrs. Fletcher, that the stock certificates should be returned to Florida to the guardian. The Defendant further testified in Florida that had he known of the competency proceedings in November of 1975, he would never have been at the subsequent trial in Florida, his explanation being 'Well, there would have been much more done, more investigation done, or I wouldn't have become involved if I had any question in my mind that there was any problem with this lady at all.' We find the evidence to be clear, cogent and convincing—indeed overwhelming—proof that the defendant was aware that there were 'problems with this lady.' Defendant then stated before the Committee that upon receiving indemnity from Mrs. Gage and Mrs. Fletcher he agreed to resist efforts to have the stocks delivered to the Florida guardian.

8. We find the evidence to be clear, cogent and convincing proof of the fact that the Defendant knew or should have known of Mrs. Houston's mental condition at the time he obtained the transfer of the stock certificates from her in November and December of 1975 to the benefit of her nieces and thereafter persisted in a course of conduct in perfecting the transfer of said stocks for the beneficial use of his clients, Mrs. Gage and Mrs. Fletcher. In this regard we note that the Defendant testified that the transfer of stocks had not been completed in accordance with the oral instructions given to him by Mrs. Houston in November, 1975 even at the time of Mrs. Houston's death in March of 1976. We find the defendant to be impaled upon the horns of his own testimony in that he stated had he known there was any problem with this

lady he would not have become involved. He was obviously aware of a problem in November of 1975 and made no investigation. When confronted with the claim of the guardian for delivery of the stock he resisted the return upon receiving indemnity from Mrs. Gage and Mrs. Fletcher—in spite of an acknowledged sense of duty to return the same. As the triers of fact we do not believe the Defendant's explanation relative to knowledge of the competency proceeding in Florida during November and December of 1975 and find that he was aware of the same; however, even giving credence to his claim of lack of knowledge, we find other evidence of conduct of the Defendant to be clear, cogent and convincing proof of the fact that he was engaging in conduct involving dishonesty, fraud, deceit and misrepresentation and further counseled and assisted his clients, Mrs. Gage and Mrs. Fletcher, in conduct that the Defendant knew to be illegal or fraudulent.

9. We find the evidence to be clear, cogent and convincing proof of the fact that at the time the Defendant testified to the Circuit Court of Pinnellas County, Florida in Civil Action 76-3578-11 that he had not filed a Federal Estate Tax Return for the estate of Mrs. Houston and had not paid Federal Estate Tax shown on the return filed.

The Defendant's testimony before the Circuit Court of Pinnellas County, Florida was unequivocal as to the filing of the return and payment of the taxes shown due thereupon. In this regard we note the Defendant's testimony at the hearing which was offered in explanation of non-receipt of the return by the Internal Revenue Service was non-persuasive and, even viewed in the light most favorable to the Defendant, shows the Defendant to be guilty of gross negligence amounting to willful misconduct in that the return to which he testified was erroneous on its face; the Defendant was unable to produce any letter of transmittal, registered mail receipt, or affidavit of mailing; and, moreover, we take judicial notice of the regulations of the Internal Revenue Service which provide that the Defendant was not the proper party to file the return and that certain documents required to be filed with the return were not included by the Defendant.

10. We further note that the Defendant admitted that after he became aware of the fact that the testimony in Pin-

nellas County, Florida in Civil Action No. 76-3578-11 as to the filing of the Federal Estate Tax Return had been discovered to have been false, he persisted in resisting the imposition of the liability for restoring the sum of $10,638.37 which his clients had gained by virtue of such testimony, causing the personal representatives of the estate of Mrs. Houston to bring suit against the Defendant and his clients on the Judgment in the Superior Court of Buncombe County, North Carolina for that and other sums still due by virtue of the Judgment entered in Civil Action No. 76-3578-11 in Pinnellas County, Florida. Defendant's explanation for such conduct was that forcing the suit on the Judgment in Buncombe County was designed to give his clients, Mrs. Gage and Mrs. Fletcher, the opportunity to again assert in North Carolina, claims that they had asserted unsuccessfully in the probate courts of Florida for certain services allegedly rendered to Mrs. Houston prior to her death. The Defendant took such position only upon the agreement of said clients to indemnity him from loss in the matter. As triers of the facts, we find the explanation of the Defendant non-persuasive and, even if true, it would be a clear violation of Disciplinary Rule 7-102(B)(2). The fraud upon the Florida Court in this particular instance was perpetrated by the Defendant himself through his testimony that he paid estate taxes.

11. The Defendant, from November of 1975 until Mrs. Houston's death in March of 1976, was Mrs. Houston's attorney. Defendant failed to render appropriate account to Mrs. Houston's guardian during her lifetime and to her personal representative after her death for the stock certificates coming into his possession as her attorney. Moreover, the Defendant did not promptly pay and deliver to Mrs. Houston's guardian during her lifetime or her personal representative after her death the stock certificates in his possession that such personal representative and guardian were entitled to receive. In this regard we note the Defendant testified that he refused to render such accounting and make delivery upon receipt of indemnity from Mrs. Gage and Mrs. Fletcher."

Defendant also assigns error, in the eight following arguments, to the Commission's conclusions of law that he was in

violation of Disciplinary Rules 1-102(A)(4); 7-102(A)(4), (5), and (7); 7-102(B)(1); 9-102(B)(3) and (4) and G.S. 84-28(b)(3).

In *N.C. State Bar v. DuMont*, 304 N.C. 627, 286 S.E. 2d 89 (1982), our Supreme Court established that the "whole record" test was the principle standard of judicial review of disciplinary hearing decisions of the Commission.

> "In applying the whole record test to the facts disclosed by the record, a reviewing court must consider the evidence which in and of itself justifies or supports the administrative findings and must also take into account the contradictory evidence or evidence from which conflicting inferences can be drawn. [Citations omitted.] Under the whole record test there must be substantial evidence to support the findings, conclusions and result. G.S. § 150A-51(5). The evidence is substantial if, when considered as a whole, it is such that a reasonable person might accept as adequate to support a conclusion."

*Id.* at 643, 286 S.E. 2d at 98-99.

[4]    After a careful review of the record and numerous exhibits before us, we hold that the findings and conclusions made by the Commission are fully supported by substantial evidence. We find no merit in defendant's argument that the Commission made improper inferences from the testimony or considered incompetent evidence in reaching its findings and conclusions.

Defendant's final contention is that the Committee erred in entering an order of disbarment. We find the Commission's conclusions that defendant violated numerous disciplinary rules governing his professional conduct fully supportive of this order.

"[F]or the protection of the public, the courts and the legal profession," 4A N.C.G.S. Appendix VI, The North Carolina State Bar, 1981 Cum. Supp. Article IX, § 1, p. 353, discipline by disbarment for misconduct sometimes, as in this case, becomes the required remedy. The task and duty of expelling one from the legal profession for deviation from the path of professional responsibility has its standards fully set out in the Rules, Regulations and Organization of the North Carolina State Bar and in the Code of Professional Responsibility of the North Carolina State Bar. 4A N.C.G.S. Appendix VI and VII, 1981 Cum. Supp. The Hearing

Committee of the Disciplinary Hearing Commission is shown by the record to have fulfilled its responsibilities to the defendant and to the public.

Affirmed.

Judges HEDRICK and WHICHARD concur.