HASSETT v. DIXIE FURNITURE CO.

[104 N.C. App. 684 (1991)]

———————————

THOMAS HASSETT, PLAINTIFF v. DIXIE FURNITURE COMPANY, INC., DEFENDANT

No. 9122SC15

(Filed 17 December 1991)

**1. Pleadings § 34 (NCI3d) — addition of party defendant — denial of motion to amend**

The trial court did not abuse its discretion in denying defendant's motion to amend the complaint to add a party defendant where the court found upon supporting evidence that the allowance of plaintiff's motion would unduly delay the trial and prejudice defendant.

**Am Jur 2d, Parties § 183.**

**2. Accord and Satisfaction § 1 (NCI4th) — breach of contract — insufficient evidence of accord and satisfaction and other defenses**

In an action to recover for breach of a contract for plaintiff to provide exclusive furniture design services for defendant manufacturer on an import dining room program, evidence that plaintiff and defendant's president discussed terms under which plaintiff would terminate his participation in the program contract, that plaintiff sent a letter to defendant's president detailing those terms and asking that defendant have its attorney draw up a proper document, and that defendant prepared and sent to plaintiff a termination agreement but plaintiff failed to respond thereto was insufficient to show an unequivocal agreement to terminate the program contract so as to require the trial court to instruct on accord and satisfac-

**HASSETT v. DIXIE FURNITURE CO.**

[104 N.C. App. 684 (1991)]

tion, compromise and settlement, ratification, estoppel, waiver and modification.

**Am Jur 2d, Accord and Satisfaction § 55.**

3. **Contracts § 168 (NCI4th)— personal services contract—damages for breach—no reduction for saved expenses**

In an action for breach of a personal services contract under which plaintiff's compensation was based on a percentage of sales, the trial court properly refused to instruct the jury that plaintiff's damages should be reduced by the costs and expenses he saved by not performing the services.

**Am Jur 2d, Damages §§ 630, 631.**

4. **Appeal and Error § 50.2 (NCI3d)— instruction on damages— issue not reached—harmless error**

Where the jury found that plaintiff did not breach its contract with defendant, defendant was not prejudiced by the trial court's instructions limiting the amount of damages defendant could recover on its counterclaim.

**Am Jur 2d, Appeal and Error § 792.**

5. **Rules of Civil Procedure § 32 (NCI3d)— deposition testimony— substantive evidence—effect of instructions**

Where the trial court admitted as substantive evidence deposition testimony introduced by defendant, the court's subsequent instructions regarding impeaching and corroborative evidence did not deprive defendant of its right to have this deposition testimony considered as substantive evidence. N.C.G.S. § 1A-1, Rule 32(a).

**Am Jur 2d, Depositions and Discovery § 197; Trial §§ 1288, 1411.**

APPEAL by plaintiff and defendant from *Seay (Thomas W., Jr.), Judge.* Judgment entered 24 May 1990 in Superior Court, DAVIDSON County. Heard in the Court of Appeals 9 October 1991.

This is a civil action wherein plaintiff seeks damages for defendant's alleged breach of contract where defendant failed to pay for services performed by plaintiff pursuant to the parties' contract. Defendant counterclaims, alleging plaintiff failed to perform on a "full-time" basis as agreed.

HASSETT v. DIXIE FURNITURE CO.

[104 N.C. App. 684 (1991)]

Evidence presented at trial is summarized as follows: On 1 March 1986, plaintiff, a New Jersey furniture designer, and defendant, a North Carolina furniture manufacturer, entered into a "program contract" whereby plaintiff, together with Charles Taylor, agreed to perform a variety of services for defendant in connection with the establishment of an Import Dining Room Program. The program contract specified that plaintiff and Taylor would perform services "on an exclusive basis," and that during the term of the agreement, plaintiff and Taylor would devote their efforts to the program full time, and would not be employed by, be under contract to, or receive any remuneration from any other person, firm, or business entity, for services rendered on import dining room programs.

In return for these services, defendant agreed to pay plaintiff and Taylor a percentage of the sales from defendant's import dining room program. These obligations to defendant were undertaken jointly by plaintiff and Taylor, and the contract did not divide the responsibility for performance between the two, nor specify a division of compensation. In fact, the contract expressly stated that defendant "has no interest in the division" of compensation between plaintiff and Taylor.

During late 1986 and early 1987, plaintiff and Taylor began to disagree about responsibility for performance of their joint obligations under the contract. At a meeting in the spring of 1987, the parties, together with Taylor, orally agreed to modify the program contract such that defendant agreed to pay plaintiff .75% for the first $20,000,000 in sales and .5% of sales in excess of that amount. Defendant further agreed to pay Taylor 2.25% of the first $20,000,000 in sales and 1.5% of all sales in excess of that amount. The parties exchanged drafts of this modified agreement, but never executed a formal written modification. The parties performed pursuant to this oral agreement until defendant ceased making payments to plaintiff in early 1988.

Between 1986 and 1987, defendant learned that plaintiff had engaged in design activities for one of defendant's competitors, A. Brandt Furniture. Hassett had revised drawings of dining room components which he had previously created and sent them to Brandt's production source in Taiwan, which also happened to be one of defendant's primary overseas production sources. On 21 October 1987 plaintiff and defendant's president, Smith Young, met

to discuss plaintiff's work for Brandt. Young determined that plaintiff was not devoting himself "full-time" to the Import Dining Room Program, and Young testified at trial that he and plaintiff orally agreed to terminate the contract. Young testified that he agreed to pay plaintiff the contract fee for the next four months, and that plaintiff had no further obligation under the contract. Plaintiff agreed that these terms were discussed, but testified that no final agreement was reached.

On 26 October 1987, plaintiff sent Young a letter stating the following: "To review our meeting of October 21st, 1987, in reference to our March 1986 agreement, if I terminate my participation, Dixie Furniture agrees to pay Tom Hassett at the current commission rate of ¾ of 1% of sales for a period of four (4) months, (November, December of 1987, January, February of 1988), and there would be no future conditions or covenants between Tom Hassett and Dixie Furniture. If that is your understanding then please have your attorney draw up a proper document as soon as possible." Defendant prepared and executed a termination agreement and sent it to plaintiff on 16 November 1987, and continued to make payments to plaintiff through the next four months, ending February 1988. Plaintiff accepted these payments, although he made no further contact with defendant. Following February 1988, defendant employed two new designers to perform plaintiff's duties on the import dining room program.

At the close of all the evidence, defendant submitted its written request for jury instructions to the court. The court rejected the proposed issues and only proffered the issues of breach of contract and damages for plaintiff's claim and defendant's counterclaim. The jury subsequently returned a verdict for plaintiff for $325,556.00. From a judgment on the verdict, plaintiff and defendant appealed.

*Ben Farmer for plaintiff, appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Hubert Humphrey, John H. Small, and James H. Jeffries, IV, for defendant, appellant.*

HEDRICK, Chief Judge.

[1] Plaintiff's sole argument on appeal is that the trial court erred by denying his motion to amend the complaint adding a party

defendant. Plaintiff contends that the trial court abused its discretion in denying plaintiff's motion to amend, thereby preventing plaintiff from presenting all claims he had against the corporate defendant and wrongfully affording the president of the corporation a permanent exemption from all liability arising from his wrongful conduct.

Plaintiff filed his complaint for breach of contract on 28 December 1988. On 31 October 1989 plaintiff's counsel met with Walter Coles, a former officer of defendant corporation. Plaintiff contends that Coles related information which gave rise to new and additional claims by plaintiff against defendant and, individually, the president of defendant corporation. Coles subsequently executed an affidavit on 14 December 1989 in support of plaintiff's motion to amend the complaint and add a party defendant, which was filed on 24 January 1990. Judge Seay denied plaintiff's motion on 14 February 1990, citing undue delay and prejudice to defendant as his reasons for the denial. The case was calendared for trial on 14 May 1990.

A motion to amend pleadings under N.C.R. Civ. P. 15(a) is addressed to the discretion of the trial judge and the denial of such motion is not reviewable absent a clear showing of an abuse of discretion. *Smith v. McRary*, 306 N.C. 664, 295 S.E.2d 444 (1982). This Court has held there was no abuse of discretion where the trial court denied a motion to amend, finding that the addition of a new cause of action would result in undue prejudice to defendants because of the need for extensive additional discovery. *Pressman v. UNC-Charlotte*, 78 N.C. App. 296, 337 S.E.2d 644 (1985).

In the present case, plaintiff's motion to amend was heard thirteen months after the action was instituted, and just three months prior to trial. Significantly, plaintiff waited over two months after learning of the new information provided by Mr. Coles to file his motion. If the motion had been allowed, plaintiff would have had to serve his amended complaint on defendant, and an answer would have been due thirty days later, assuming no time extensions were granted. This would have left less than sixty days prior to trial for discovery, pretrial motions, and preparations for the trial of claims for damages exceeding $1,000,000.00.

These facts support the conclusion of the trial court that allowing plaintiff's motion would unduly delay the trial and prejudice defendant. We hold that plaintiff has failed to show a clear abuse

HASSETT v. DIXIE FURNITURE CO.

[104 N.C. App. 684 (1991)]

of discretion by Judge Seay, and affirm the denial of plaintiff's motion to amend the complaint and add a party defendant.

[2] Based on assignments of error four through nine in the record, defendant contends "the trial court committed reversible error by refusing to instruct the jury on accord and satisfaction, compromise and settlement, ratification, estoppel, waiver and modification." Defendant argues that the instructions were required "because they were pled, supported by the evidence and were the subject of proposed jury instructions," and that "the court's. refusal to instruct on these issues constituted a failure to submit all contested issues to the jury."

N.C.R. Civ. P. 51(a) requires a trial judge, in instructing the jury, ". . . . to declare and explain the law arising on the evidence presented in the case . . . . ." *Brown v. Scism*, 50 N.C. App. 619, 626, 274 S.E.2d 897, 901 (1975), *disc. review denied*, 302 N.C. 396, 276 S.E.2d 919 (1981). When a party contends that certain acts constitute a defense, the trial court must submit the issue to the jury with appropriate instructions if there is evidence which, when viewed in the light most favorable to the proponent, will support a reasonable inference of each essential element of the defense asserted. *Plymouth Pallett Co. v. Wood*, 51 N.C. App. 702, 277 S.E.2d 462, *disc. review denied*, 303 N.C. 545, 281 S.E.2d 393 (1981).

We note at the outset that these assignments of error relate to the meeting between plaintiff and defendant's president, Smith Young, on 21 October 1987, wherein the parties discussed terms if plaintiff would agree to terminate his participation in the program contract. Afterwards, plaintiff sent a letter to defendant's president on 26 October 1987 detailing those terms and asked that "[i]f that is your understanding then please have your attorney draw up a proper document as soon as possible." Defendant then prepared a termination agreement which defendant sent to plaintiff on 16 November 1987. Plaintiff never responded, and defendant continued to pay plaintiff through February, 1988. At that time, defendant employed two new designers for the Import Dining Room Program.

Judge Seay instructed the jury, with respect to this foregoing evidence, that if they found that defendant failed to pay the amount stipulated and provided under the contract, then the jury would answer "yes" to the issue of whether defendant breached the con-

HASSETT v. DIXIE FURNITURE CO.

[104 N.C. App. 684 (1991)]

tract. On the other hand, if the jury found that the parties mutually agreed to terminate the contract by their discussion, letter, and termination agreement of October, 1987, Judge Seay charged that the jury should find that no breach occurred and that defendant would have paid the obligations it agreed to pay and there would be no recovery by plaintiff.

In our opinion, the evidence with respect to the meeting of October, 1988 and all subsequent events relates only to whether defendant breached the contract entered into in March, 1986, and modified by the parties on 1 May 1987. We are satisfied that the evidence raises only the issue of whether the program contract was breached, and that it is not sufficient to raise the separate defenses of "accord and satisfaction, compromise and settlement, ratification, estoppel, waiver and modification." The letter written by plaintiff to defendant on 26 October 1987 negates any conceivable construction of the events at the meeting on 21 October 1987 as an unequivocal agreement to terminate the program contract.

[3] Defendant's next argument is that the trial court erred by failing to properly instruct the jury as to the correct measure of damages for breach of a contract for personal services. Defendant contends that he is entitled to a new trial because the trial judge failed to give the proposed jury instruction that plaintiff's damages should be reduced by the costs and expenses he saved by not performing the services.

The proper measure of damages for breach of a personal services contract was addressed in *Arnold v. Ray Charles Enterprises, Inc.*, 264 N.C. 92, 141 S.E.2d 14 (1965). In that case, defendant Ray Charles failed to perform a concert and thereby breached his contract with the plaintiff. The court found as fact that the plaintiff was to have paid the defendant $3,500 plus 50% of gross admission receipts in excess of $7,000, less admission taxes. The defendant argued that the plaintiff's damages should have been reduced by costs and expenses of promoting, which were anticipated but not incurred as a result of the defendant's breach.

In overruling the defendant's argument, the Court held that the amounts which the plaintiff expended or agreed to expend were of no concern to the defendant, since such expenses came out of the plaintiff's half of the gross receipts. While the plaintiff's net profits would depend on the amount of his expenditures, gross profits were the measure of the plaintiff's damages. *Id.*

HASSETT v. DIXIE FURNITURE CO.

[104 N.C. App. 684 (1991)]

Similarly, in the present case, according to the program contract as modified 1 May 1987, plaintiff was to be compensated "at the rate of ¾ of 1% (0.75%) on the first $20,000,000.00 in sales" and "at the rate of ½ of 1% (0.50%) of the amount in excess of $20,000,000.00." Based on *Arnold*, plaintiff was entitled to his gross profits without a reduction for expenses or costs not actually incurred. Defendant's argument is overruled.

[4] Defendant's next argument, relating to his counterclaim, is that the trial court erred by instructing the jury that it could only find Dixie to have been damaged to the extent its damages exceeded $325,556.00. Defendant contends that this instruction was "tantamount to a peremptory instruction that Dixie was not entitled to a recovery on its counterclaim."

The court charged the jury with respect to defendant's counterclaim for damages as follows:

Members of the jury, if you reach this issue and consider it, why members of the jury, there would be one *limitation* on any recovery that the defendant would be entitled to, specifically, in that there would be a consideration by you that the defendant would be entitled to the overage of the amount it paid over $325,556 for the additional services allegedly rendered to it as a substitute for the plaintiff's services when it hired the two additional designers at a cost to Dixie of $216,666 to do the work that the plaintiff, Thomas Hassett, was doing for that period of time between the 1st of April, 1988, and the end of the contract in April of 1990 (emphasis added).

This instruction did not require the jury to find that plaintiff breached the Program contract with defendant only if defendant could prove his damages were in excess of $325,556.00. Instead, the instruction was that defendant's damages would be *limited to* such overage. In order for this question to be addressed, however, the jury must first determine whether plaintiff breached the Program contract with defendant. Since the jury answered this issue "No," defendant's argument is moot. The jury found that plaintiff did not breach the Program contract, and therefore defendant would not be entitled to any damages. Defendant's assignment of error is without merit.

**[5]** Defendant's final argument is that the trial court erred by instructing the jury that deposition testimony could only be used to evaluate credibility. Defendant contends that the jury instruction deprived Dixie of its right to have this deposition testimony considered as substantive evidence.

At trial, defendant introduced the deposition testimony of plaintiff which was received by the court as substantive evidence. Following the presentation of evidence, the parties made no written requests for special jury instructions regarding deposition testimony. Immediately preceding deliberations by the jury, defendant generally objected to the instructions concerning the use of testimony not given in court, and asked the court to reinstruct on that issue.

The record discloses that defendant offered the deposition testimony of plaintiff, and that the court received this testimony as substantive evidence in accordance with N.C.R. Civ. P. 32(a). The subsequent general instruction by the court regarding impeaching and corroborative evidence does not destroy the admission of plaintiff's deposition as substantive evidence. Defendant's argument is without merit.

We find no prejudicial error in the trial, and the judgment entered on the verdict will be affirmed.

No error.

Judges EAGLES and GREENE concur.