JENNY BARBEE SHORE, Plaintiff v. RAY FARMER, t/d/b/a,
RAY FARMER BONDING, Defendant

No. COA98-408

(Filed 1 June 1999)

### 1. Appeal and Error— preservation of issues—bootstrapped argument—not allowed

Defendant in an action arising from a bail bond was not allowed to bootstrap his unpreserved argument regarding submission of punitive damages to the jury onto his challenge to the court's allowance of plaintiff's motion to amend her pleadings.

### 2. Pleadings— amendment—punitive damages

The trial court did not abuse its discretion in an action arising from a bail bond by allowing plaintiff's motion to amend her pleadings to conform to the evidence and seek punitive damages. The specific language of the complaint sufficiently articulated a claim for punitive damages so as to put defendant on notice in that the complaint alleged that defendant wrongfully arrested plaintiff, thereby inflicting severe emotional distress, and that his acts were deliberate, vicious, malicious, and without just cause or excuse. Defendant advanced no suggestion of additional witnesses he might have called, further cross-examination he would have conducted, supplementary witnesses he would have introduced, or how amendment otherwise prejudiced him in maintaining his defense.

### 3. Appeal and Error— preservation of issues—instructions on punitive damages—no objection

Defendant waived any challenge to an instruction on punitive damages in an action arising from a bail bond by not objecting at trial.

### 4. Trial— comments by judge—clarification of testimony—not prejudicial

Defendant in a civil claim arising from a bail bond did not show that comments by the trial court were so disparaging in their effect that they could reasonably be said to have prejudiced defendant where there was no indication that the trial court in any manner renounced the seriousness of the trial or discredited the sanctity of the courtroom and the probable effect of the court's interjections may reasonably be considered as having

been to clarify testimony and ensure that jurors were able to hear.

**5. Appeal and Error— preservation of issues—no argument in brief—issue waived**

A cross assignment of error which was not supported by an argument in the brief was waived.

Judge WALKER concurring in part and dissenting in part.

Appeal by defendant from judgment entered 30 July 1997 by Judge Thomas W. Seay, Jr., in Rowan County Superior Court. Heard in the Court of Appeals 29 October 1998.

*David Y. Bingham and Thomas M. King for plaintiff-appellee.*

*The Holshouser Law Firm, by John L. Holshouser, Jr., for defendant-appellant.*

JOHN, Judge.

Defendant Ray Farmer, t/d/b/a Ray Farmer Bonding, appeals the judgment of the trial court, arguing the court (1) "abused its discretion in allowing [p]laintiff to [a]mend her [c]omplaint . . . after the close of all of the evidence;" and (2) "erred by submitting the issue of [p]unitive [d]amages to the [j]ury." Defendant also assigns error to certain comments by the trial court. Plaintiff Jenny Barbee Shore cross-assigns as error the court's "failure to submit the issue of . . . unfair and deceptive trade practice[s] to the jury." We conclude the trial court committed no prejudicial error.

Pertinent facts and procedural history include the following: During a June 1991 vacation in Myrtle Beach, South Carolina, plaintiff and her husband were arrested on North Carolina warrants. The couple waived extradition and were transported to the Ashe County jail. Three days later, plaintiff was transferred to the Watauga County jail.

Defendant, a professional bail bondsman, subsequently represented to plaintiff that $75,000.00 in premiums would procure the requisite bail bonds to secure her release. On 25 June 1991, plaintiff advanced defendant a portion of the specified amount and promised tender of the balance within ten (10) days of her release. Upon defendant's posting of plaintiff's bail, she was released and subsequently paid defendant the amount due on 29 June 1991. At that time,

plaintiff and defendant discussed bond for plaintiff's husband. The latter was released two days later upon defendant's posting of bail upon receipt of a $10,000.00 premium procured by placing a charge in that amount on the Gold Master Credit Card of Bob LaBianca (LaBianca). On 26 July 1991, however, defendant was informed by LaBianca's bank that LaBianca had signed a statement indicating he did not authorize the $10,000.00 credit.

On 12 August 1991, Shore and her husband, along with their two children, traveled to the Allegheny County courthouse for a scheduled bond hearing. However, defendant and two other bondsmen were waiting to arrest and surrender plaintiff and her husband into custody. While handcuffing plaintiff in the presence of her children and other onlookers, defendant stated he was causing her to be surrendered because her husband had not paid his bond in consequence of LaBianca's recission of the $10,000.00 credit card charge.

On 16 October 1995, plaintiff filed the instant action alleging breach of contract, unfair and deceptive trade practices, and false imprisonment or wrongful arrest resulting in "severe emotional distress." By answer filed 9 January 1996, defendant generally denied plaintiff's allegations and asserted that "all actions taken by [d]efendant with respect to plaintiff were fully authorized and prescribed by law."

At trial, upon oral motion by plaintiff to amend after presentation of all evidence, the trial court submitted an issue of punitive damages to the jury. Plaintiff thereafter filed a written amendment to her complaint so as to assert a claim for "punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00)." The jury found in plaintiff's favor and awarded, *inter alia*, $150,000.00 in punitive damages. Plaintiff and defendant filed timely notice of appeal.

[1] We first consider defendant's contention that the trial court "abused its discretion in allowing plaintiff-appellee to amend her complaint to request punitive damages." We disagree.

We note initially that this issue, as argued by defendant in his appellate brief and discussed by the dissent, is not properly before us. The parties recite only that plaintiff's oral motion to amend her complaint to allege a claim for punitive damages was allowed by the trial court, over defendant's objection, during an unrecorded, in-chambers conference during which the court's charge to the jury was discussed. Both defendant and the dissent presently challenge the

action of the trial court on grounds, in the words of defendant, that "punitive damages are not recoverable in a mere breach-of-contract case."

However, as noted below, defendant lodged no objection on the record to the submission of a punitive damages issue to the jury either at the recorded charge conference or subsequent to the trial court's jury charge. *See* N.C.R. App. P. 10(b)(2) ("[a] party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict"). We do not believe defendant may now properly attempt to bootstrap his unpreserved argument regarding submission of punitive damages to the jury onto his challenge to the court's allowance of plaintiff's motion to amend. *See State v. Trull*, 349 N.C. 428, 446, 509 S.E.2d 178, 191 (1998) (where evidence admitted over objection and later admitted without objection, "the benefit of the objection is lost"), and *State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (pre-trial motion *in limine* fails to preserve issue for appellate review when no objection lodged at time challenged evidence is introduced at trial). Accordingly, it is unnecessary to address either defendant's contentions or the exhaustive commentary by the dissent regarding the propriety of punitive damages in a case wherein a surety is accused of wrongfully surrendering a principal.[1]

---

1. Notwithstanding, we note the dissent asserts that "broad powers" are accorded to sureties and "bounty hunters." We do not question that professional sureties play a significant and vital role in the operation of our criminal justice system, nor that sureties possess "sweeping power . . . to apprehend the principal . . . ." *State v. Mathis*, 349 N.C. 503, 512, 509 S.E.2d 155, 160 (1998). However, defendant surrendered plaintiff because her husband had not paid *his* bond, and the record contains no evidence that plaintiff was involved in her husband's bond such that his failure to pay might be attributable to her or that she might be construed as a principal reference his bond. Defendant's rationale cannot be deemed subsumed within the statutory provisions justifying surrender of a *principal* based upon "breach of the undertaking in any type of bail or fine and cash bond." N.C.G.S. § 58-71-20 (1994). Indeed, all the evidence reflected plaintiff had paid *her* bond premium in full some six days earlier than contemplated by her agreement with defendant and had otherwise fully complied with that agreement and the conditions of her release; further there was no suggestion plaintiff was at risk to "jump bail" or fail to appear. Had the evidence been otherwise, plaintiff's claim for breach of contract, much less for punitive damages, would have failed.

Additionally, the dissent posits the necessity of a separate "identifiable tortious act" to support an award of punitive damages. However, this Court has stated

[n]o . . . case[] . . . require[s] proof of a *separate* identifiable tort unrelated to the contract . . . . [T]he tort [wrongful arrest in the instant case] need only be "identifiable" and . . . punitive damages may be recoverable "even though the tort also *constitutes ... a breach of contract.*"

**[2]** Turning to the question actually before us, we observe that

> [w]hen issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, either before or after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues raised by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be served thereby and the objecting party fails to satisfy the court *that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.* The court may grant a continuance to enable the objecting party to meet such evidence.

N.C.G.S. § 1A-1, Rule 15(b) (1990) (Rule 15(b)) (emphasis added).

The effect of Rule 15(b)

> is to allow amendment by implied consent to change the legal theory of the cause of action so long as the opposing party has not been prejudiced in presenting his case, *i.e.*, where he had a fair opportunity to defend his case.

*Roberts v. Memorial Park*, 281 N.C. 48, 59, 187 S.E.2d 721, 727 (1972). Further, the trial court's ruling on a motion to amend pleadings may be reversed on appeal only upon a showing of abuse of discretion. *See Hassett v. Dixie Furniture Co.*, 104 N.C. App. 684, 688, 411 S.E.2d 187, 190 (1991), *rev'd on other grounds*, 333 N.C. 307, 425 S.E.2d 683 (1993).

In the case *sub judice*, plaintiff's complaint alleged defendant wrongfully arrested her thereby inflicting "severe emotional distress," and that his acts were "deliberate, vicious, malicious, and without just cause or excuse." The specific language of the complaint thus sufficiently articulated a claim for punitive damages as to put defendant on notice of such a claim. *See Holloway v. Wachovia Bank*

---

*Dailey v. Integon Ins. Corp.*, 75 N.C. App. 387, 395-96, 331 S.E.2d 148, 154 (quoting *Newton v. Standard Fire Insurance Co.*, 291 N.C. 105, 111, 229 S.E.2d 297, 301 (1976)), *disc. review denied*, 314 N.C. 664, 336 S.E.2d 399 (1985).

& *Trust Co.*, 339 N.C. 338, 348, 452 S.E.2d 233, 238 (1994) (complaint alleging intentional infliction of emotional distress and "intentional acts of the type . . . giving rise to punitive damages" sufficiently put defendants on notice of plaintiffs' punitive damages claim); *see also Stanback v. Stanback*, 297 N.C. 181, 196-98, 254 S.E.2d 611, 621-24 (1979) (plaintiff's punitive damages claim properly submitted to jury where "plaintiff's complaint with respect to punitive damages [was] sufficient at least to state a claim for damages for an identifiable tort accompanying a breach of contract" and also alleged defendant acted "wilful[ly], malicious[ly] . . . recklessly and irresponsibly and with full knowledge").

Moreover, we note defendant has advanced no suggestion of additional witnesses he might have called, further cross-examination he would have conducted, supplementary exhibits he would have introduced, or how amendment otherwise prejudiced him in maintaining his defense. *See Trucking Co. v. Phillips*, 51 N.C. App. 85, 90, 275 S.E.2d 497, 500 (1981) ("defendants failed to show how the amendments [to pleadings so as to conform to the evidence] would [have] prejudice[d] them in maintaining their defense").

Accordingly, we cannot say the trial court abused its discretion in allowing plaintiff's motion to amend her pleadings so as to conform to the evidence presented. Rather, it appears defendant was afforded adequate notice of plaintiff's claim for punitive damages and that he had "fair opportunity" to defend against such claim. *See Roberts*, 281 N.C. at 59, 187 S.E.2d at 727.

**[3]** Returning to defendant's argument as presented in his appellate brief that the trial court "erred by submitting the issue of punitive damages to the jury," we reiterate that the record reflects no objection by defendant to any evidence tending to support plaintiff's claim for punitive damages or, as previously noted, to the court's instruction of the jury on that issue. Indeed, the transcript reflects the following multiple opportunities at which defendant might have lodged objection to a jury instruction on punitive damages:

The Court: I'll hear each of you . . . does anybody want to say anything at all about the issues that I've [set out], beyond what we have here?

[Brief response from counsel for plaintiff; no response from counsel for defendant.]

. . . .

The Court: So, that's what I—does anybody want to say anything before I send her out to type up the issues?

[Counsel for Plaintiff]: As to the charge which your Honor has indicated he'd give, we'd concur.

The Court: Mr. Holshouser?

[Counsel for defendant]: (No response.)

. . . .

The Court: This is in the absence of the jury. Before sending the verdict sheet I will entertain any specific objections to the charge from the plaintiff.

[Counsel for plaintiff]: We have none, Your Honor.

The Court: From the defendant?

*[Counsel for defendant]: None, Your Honor.*

(emphasis added).

Therefore, as no objection was proffered at trial to evidence sustaining plaintiff's claim for punitive damages or to the court's jury instruction on that issue, defendant has waived his right to challenge such instruction on appeal. *See* N.C.R. App. P. 10(b)(2); *see also J.M. Westall & Co. v. Windswept View of Asheville*, 97 N.C. App. 71, 76, 387 S.E.2d 67, 69, *disc. review denied*, 327 N.C. 139, 394 S.E.2d 175 (1990) (if "no objection is made to evidence on the ground that it is outside the issues raised by the pleadings, [then] the issue raised by the evidence may be placed before the jury").

**[4]** Defendant also maintains the trial court

improperly expressed [it]s opinion by making disparaging remarks in verbal exchanges with defendant and remarks regarding defendant's witnesses in the presence of the jury.

This assertion is unfounded.

A trial court may not "express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C.G.S. § 15A-1222 (1997). However, to justify award of a new trial on appeal, a defendant must establish that comments of the trial court "were so disparaging in their effect that they could reasonably be said to have prejudiced the defendant." *Board of Transportation v. Wilder*, 28 N.C. App. 105, 107, 220 S.E.2d 183, 184

(1975); *cf.* N.C.G.S. § 1A-1, Rule 61 (1990) (harmless error does not warrant new trial). The criteria for determining whether comments of the trial court unfairly prejudiced a party is the "probable effect [of the allegedly improper comments] on the jury." *Saintsing v. Taylor*, 57 N.C. App. 467, 473, 291 S.E.2d 880, 884, *disc. review denied*, 306 N.C. 558, 294 S.E.2d 224 (1982).

Defendant points to some seven allegedly prejudicial statements of the trial court, relying upon *McNeill v. Durham County ABC Bd.*, 322 N.C. 425, 368 S.E.2d 619 (1988). In *McNeill*, our Supreme Court held a new trial was required based upon approximately thirty-seven (37) remarks of the trial court determined to have been unfairly prejudicial. The Court stated the trial judge therein had "diminished the seriousness of the [trial]" through "the appearance of antagonism towards the defense attorney" and his repeated commentary which produced "episodic laughter sufficient in time and manner to warrant notation by the court reporter." *Id.* at 429, 368 S.E.2d 622.

As an example of the remarks *sub judice* which defendant characterizes as "harsh rebukes," "disparaging," and as "express[ing] a distinct dislike of [defendant] and an antagonism toward his case," defendant cites the occasion of his testimony concerning receipt of a subpoena:

Q: Does the back of the subpoena, which contains the service information, indicate the date that that [sic] was received?

A: I didn't receive it-

Q: No, the date received is what?

A: It's got marked on there, "7-17."

THE COURT: Would you just listen to the question he asks you, Mr. Farmer, and answer the question he asks you, now. Just let him answer the question. Look on the form and see if it's got a date it was received. There's nothing difficult about that. Answer the question Mr. Farmer.

. . . .

Q: And this indicates that Ray Farmer was subpoenaed by telephone communication, doesn't it?

A: Yes, sir.

Q: But, your testimony is that these Court records are wrong. Is that correct?

A: Yes, sir.

THE COURT: You say you didn't get subpoenaed? That that subpoena wasn't served on you by telephone as it reflects in the record? This is *important stuff*, Mr. Farmer.

A. I know, Your Honor.

. . . .

THE COURT: And you didn't get served by telephone by anybody?

A: I was called by someone. I don't know who.

THE COURT: You got called.

Our review of the instant record reveals the trial court's remarks, considered in context, were not unduly prejudicial to defendant and are distinguishable from the comments of the trial court deemed prejudicial in *McNeill*. First, there is no indication the trial court in any manner renounced the seriousness of the trial or discredited the sanctity of the courtroom. *See id.* at 429, 368 S.E.2d 622. In addition, defendant's protestations to the contrary, the "probable effect," *Saintsing*, 57 N.C. App. at 472, 291 S.E.2d at 884, of the court's interjections noted above, as well as the other instances complained of, may reasonably be considered as having been to clarify the testimony of witnesses and ensure that the jurors were able to hear what was being said. *See Roberson v. Roberson*, 40 N.C. App. 193, 194, 252 S.E.2d 237, 238 (1979) ("[T]he power of the trial judge to maintain absolute control of his courtroom is essential to the maintenance of proper decorum and the effective administration of justice"); *see also N.C. State Bar v. Talman*, 62 N.C. App. 355, 362, 303 S.E.2d 175, 179 (trial judge has privilege and duty to ask questions of witnesses when necessary for purpose of clarification and to ascertain truth), *disc. review denied*, 309 N.C. 192, 305 S.E.2d 189 (1983).

Perhaps more significantly and unlike the situation in *McNeill* where the "disaffection" displayed toward the defendant's attorney by the trial court was not "visited upon plaintiff's witnesses," *McNeill*, 322 N.C. at 429, 368 S.E.2d at 622, comments by the trial court herein similar to those set out above were expressed during plain-

tiff's presentation of evidence. For example, the court directed plaintiff's witnesses to listen to the questions they were being asked, and sought on occasion to clarify questions and answers elicited on behalf of plaintiff. In short, defendant has failed to show the challenged comments of the trial court "were so disparaging in their effect that they could reasonably be said to have prejudiced the defendant." *Wilder*, 28 N.C. App. at 107, 220 S.E.2d at 184.

**[5]** Concerning plaintiff's cross-assignment of error asserting the trial court failed "to submit the issue of whether Defendant's conduct was an unfair and deceptive trade practice to the jury," we observe plaintiff has set forth no argument in her appellate brief in support of this contention. As such, plaintiff has waived this issue on appeal and we decline to consider it. *See* N.C.R. App. P. 28(b)(5) ("[a]ssignments of error not set out in appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned").

No error.

Judge MARTIN concurs.

Judge Walker concurs in part and dissents in part.

Judge WALKER concurring in part and dissenting in part.

I agree that some of the trial court's questions and remarks made during the defendant's evidence showed some impatience on the part of the court. However, I agree with the majority that these comments were not sufficiently prejudicial to warrant a new trial. I respectfully dissent from the majority's conclusion that the trial court did not err in allowing plaintiff's motion to amend her pleadings to conform to the evidence as the evidence in this case does not support a claim for punitive damages.

In her complaint, plaintiff alleged a cause of action for breach of contract, unfair and deceptive trade practices, and intentional infliction of emotional distress. At the close of all the evidence, the trial court refused plaintiff's request to submit the issues of unfair and deceptive trade practices and intentional infliction of emotional distress to the jury. However, over defendant's objection, the trial court allowed plaintiff's motion to amend her complaint to conform to the evidence and request punitive damages.

The majority states that the issue of whether the trial court abused its discretion in allowing the plaintiff to amend her complaint to request punitive damages is not properly before this Court since the defendant did not further object after the trial court instructed the jury. N.C.R. App. P. 10(b)(1) provides as follows:

General. In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. . . .

The record is clear that defendant objected to plaintiff's motion to amend her complaint to assert a claim for punitive damages. No further objection by the defendant was required in order to preserve this issue for appeal. In support of its position, the majority points to *State v. Hayes*, 350 N.C. 79, 511 S.E.2d 302 (1999) in which our Supreme Court held that a *motion in limine* will not be sufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to object to the evidence when it is offered at trial. In that case, the Court reasoned that a *motion in limine* is "preliminary in nature and subject to change at trial, depending on the evidence offered. . . ." *Id.* at 80, 511 S.E.2d at 303. In contrast, the trial court may allow the pleadings to be amended to conform to the evidence. N.C. Gen. Stat. § 1A-1, Rule 15(b) (1990). The trial court's ruling on a motion to amend will only be reversed on a showing of abuse of discretion. *Tyson v. Ciba-Geigy Corp.*, 82 N.C. App. 626, 629, 347 S.E.2d 473, 476 (1986). Thus, since all the evidence has been presented, a motion to amend at this stage is not preliminary in nature; therefore, defendant was not required to object a second time in order to preserve this issue for review on appeal.

Plaintiff's evidence tended to show that in 1991 she and her husband were arrested in South Carolina on North Carolina warrants. Defendant, a bail bondsman, posted the required bond to secure plaintiff's release and she paid the premium. Subsequently, defendant posted a bond for plaintiff's husband after receiving the appropriate premium on a credit card. Later, the charge on the credit card was denied. Defendant offered evidence that plaintiff and her husband concealed themselves from defendant by failing to keep him accurately apprised of their location and by being unable to be reached by telephone for the period from the time of their release in June 1991

until defendant learned they were to appear in court on 12 August 1991. At that time, the defendant surrendered the plaintiff and her husband to the custody of law enforcement.

It is well-settled that punitive damages are generally not allowed for a breach of contract with the exception of breach of contract to marry. *Newton v. Insurance Co.*, 291 N.C. 105, 111, 229 S.E.2d 297, 301 (1976); *Taha v. Thompson*, 120 N.C. App. 697, 704-05, 463 S.E.2d 553-58 (1995), *disc. review denied*, 344 N.C. 443, 476 S.E.2d 130-31 (1996). Punitive damages are not allowed even when the breach is wilful, malicious or oppressive. *Newton*, 291 N.C. at 111, 229 S.E.2d at 301. However, "when the breach of contract also constitutes or is accompanied by an identifiable tortious act, the tort committed may be grounds for recovery of punitive damages." *Taha*, 120 N.C. App. at 704-05, 463 S.E.2d at 558. Mere allegations of an identifiable tort are "insufficient alone to support a claim for punitive damages." *Id.* Furthermore, in order to sustain a claim for punitive damages, there must be an identifiable tort which is accompanied by or partakes of some element of aggravation. *McDaniel v. Bass-Smith Funeral Home, Inc.*, 80 N.C. App. 629, 634, 343 S.E.2d 228, 231 (1986). Here, there was no identifiable tortious act since the trial court refused to submit the issues of unfair and deceptive trade practices and intentional infliction of emotional distress to the jury. Therefore, even if the actions of the defendant amounted to a breach of contract, there was no identifiable tort to support punitive damages.

The majority holds that a separate identifiable tortious act is not required to support an award of punitive damages in a breach of contract case, *citing Dailey v. Integon Ins. Corp.*, 75 N.C. App. 387, 331 S.E.2d 148, *disc. review denied*, 314 N.C. 664, 336 S.E.2d 399 (1985) in support of this proposition. However, in that case, this Court found that the tort alleged the defendant's bad faith refusal to settle, "not only accompanied the breach of contract, it also was a breach of contract that was accomplished or accompanied by some element of aggravation." *Id.* at 396, 331 S.E.2d at 154. This Court further found that "the record is replete with evidence of defendant's malice, oppression, wilfulness and reckless indifference to consequences." *Id.* at 396, 331 S.E.2d at 155. Therefore, this Court found an identifiable tort from the plaintiff's allegations sufficient to support a claim for punitive damages in a breach of contract action.

Furthermore, the defendant acted within his rights as a bail bondsman when he surrendered the plaintiff to the custody of law enforcement. The concept of bail is rooted in English common law.

**SHORE v. FARMER**

[133 N.C. App. 350 (1999)]

Bail bondsmen and the bounty hunters they employ to track down fugitives are essential in the American judicial system. Bounty hunters return to custody over ninety-nine percent of the criminal defendants who contract with a bondsman and then "jump" bail which amounts to well over 25,000 fugitives a year. Andrew DeForest Patrick, Note, *Running From the Law: Should Bounty Hunters be Considered State Actors and Thus Subject to Constitutional Restraints?*, 52 Vand. L. Rev. 171, 176 (1999). Due to a state's limited resources and the efficiency of bail bondsmen, it is clear what a critical role they play in the criminal justice system. *Id.*

Traditionally, the bail bondsman or surety was granted the same rights and powers as a sheriff capturing an escaped prisoner. *State v. Mathis*, 349 N.C. 503, 509, 509 S.E.2d 155, 158 (1998). Since the defendant or "principal was never out of the 'custody' of the surety, the surety could take him at any time, 'when and where he pleases.' " *Id.* (*quoting Read v. Case*, 4 Conn. 166, 170 (1822)). The United States Supreme Court has summarized the powers of bail bondsmen as follows:

> When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuation of the original imprisonment. *Whenever they choose to do so, they may seize him and deliver him up in their discharge;* and if that cannot be done at once, they may imprison him until it can be done.
>
> . . .
>
> It is likened to the rearrest by the sheriff of an escaping prisoner. In 6 Modern it is said: "The bail have their principal on a string, and may pull the string whenever they please and render him in their discharge."

*Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 371-72, 21 L. Ed. 287, 290 (1872) (emphasis added).

The broad power given to bail bondsmen is derived from a contractual relationship between the surety and the principal. *Mathis*, 349 N.C. at 510, 509 S.E.2d at 159. As our Supreme Court stated "the bond agreement provides that the surety post the bail, and in return, *the principal agrees that the surety can retake him at any time, even before forfeiture of the bond." Id.* (emphasis added). The government is not to interfere with this private right to recapture on the part of the surety and the "seizure of the principal by the surety is

technically not an 'arrest' at all and may be accomplished without process of law." *Id.*

The common law of North Carolina has always recognized the broad powers of bail bondsmen. *Id.* at 511, 509 S.E.2d at 160. In addition, N.C. Gen. Stat. § 58-71-20 (Cum. Supp. 1998) provides as follows:

At any time before there has been a breach of the undertaking in any type of bail or fine and cash bond the surety may surrender the defendant to the official to whose custody the defendant was committed at the time bail was taken, or to the official into whose custody the defendant would have been given had he been committed; in such case the full premium shall be returned within 72 hours after the surrender. The defendant may be surrendered without the return of the premium for the bond if the defendant does any of the following:

(1) Willfully fails to pay the premium to the surety or willfully fails to make a premium payment under the agreement specified in G.S. 58-71-167.

(2) Changes his or her address without notifying the surety before the address change.

(3) Physically hides from the surety.

(4) Leaves the State without the permission of the surety.

(5) Violates any order of the court.

Thus, it is clear that a bail bondsman may take a defendant into custody *at any time*. Bail bondsmen usually base their decision to surrender a principal based on concern that the defendant will "jump" bail and fail to appear; however, they are not required to do so. If a bail bondsman turns in a defendant without justification, he is liable only in contract. As the statute provides, the bail bondsman would be required to refund the bond premium to the principal. In this case, regardless of whether or not plaintiff has a valid claim for a breach of contract, when the defendant surrendered the plaintiff, he was within his right to do so. Therefore, there can be nothing aggravating about defendant's conduct to warrant punitive damages since he acted within the bounds of the law when he surrendered plaintiff. Any further restraints placed on the broad powers accorded bail bondsmen should be done by the legislature, not by subjecting them to punitive damages where juries do not have an understanding of

the rights of the bail bondsmen or of the role they perform in the criminal justice system.